**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

WILLIAM GRONDIN,

      Plaintiff,

v.

FANATICS, INC.,

      Defendant.

Civil Action No. 2:22-cv-01946-GEKP

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT'S**</u>
<u>**MOTION TO DISMISS FIRST AMENDED COMPLAINT**</u>

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................3

PROCEDURAL HISTORY...................................................................................................6

LEGAL STANDARD............................................................................................................7

ARGUMENT .......................................................................................................................8

      I.     The Work and the Fanatics Products Are Not Substantially Similar......................9

            A.     The Work Contains Little to No Original, Protectable Expression and Thus is Entitled, at Most, to Only Narrow or "Thin" Copyright Protection.......10

            B.     The Fanatics Products Are Not Substantially Similar to Any Potentially Protectable Expression Embodied in the Work ........................................16

      II.    In Addition to A Clear Lack of Substantial Similarity, the FAC Also Suffers From Other Defects Warranting Dismissal. ...................................................................20

            A.     The FAC Fails to State a Claim for Copyright Infringement Because It Does Not Establish That Fanatics Had Access to the Work ..............................20

            B.     The FAC Does Not Adequately Plead Facts Demonstrating Ownership of a Valid Copyright. ......................................................................................22

      III.   Dismissal Should be With Prejudice Because Further Amendment is Futile.......24

      IV.   Fanatics Should Be Awarded its Attorneys' Fees As The Prevailing Party .........25

CONCLUSION...................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
    29 F.3d 855 (3d Cir. 1994) ............................................................................... 8

*Apple Corps. Ltd. v. Button Master, P.C.P., Inc.*,
    No. CIV. A. 96-5470, 1998 WL 126935 (E.D. Pa. Mar. 19, 1998).......................... 9

*Arthur v. Am. Broad. Cos., Inc.*,
    633 F. Supp. 146 (S.D.N.Y. 1985) .............................................................. 12, 13, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................... 7, 8

*Bath Auth., LLC v. Anzzi LLC*,
    No. 18-00834, 2018 WL 5112889 (E.D. Pa. Oct. 19, 2018) ..................................... 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................. 7, 8, 21, 23

*Cianelli v. Nourison Indus., Inc.*,
    No. 3:19-cv-19147(FLW), 2020 WL 4882500 (D.N.J. Aug. 20, 2020)............................ 20, 21

*Clanton v. UMG Recordings, Inc.*,
    556 F. Supp. 3d 322 (S.D.N.Y. 2021) .................................................................. 22

*Cottrill v. Spears*,
    No. CIV.A. 02-3646, 2003 WL 21223846 (E.D. Pa. May 22, 2003)...................................... 21

*Digit. Dream Labs, LLC v. Living Tech. (Shenzhen) Co.*,
    No. 2:20-CV-01500-CCW, 2022 WL 597358 (W.D. Pa. Feb. 28, 2022) ................... 13, 14, 19

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
    232 F.3d 173 (3d Cir. 2000) ............................................................................... 8

*Durham Indus., Inc. v. Tomy Corp.*,
    630 F.2d 905 (2d Cir. 1980) ............................................................................... 11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
    499 U.S. 340 (1991)............................................................................... 1, 8, 9, 15

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)....................................................................................... 25

*Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc.*,
    575 F.2d 62 (3d Cir. 1978) ............................................................................... 16

*Frybarger v. Int'l Bus. Machs. Corp.*,
    812 F.2d 525 (9th Cir. 1987) .................................................. 13

*Google LLC v. Oracle Am., Inc.*,
    141 S. Ct. 1183 (2021) ........................................................... 1

*Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*,
    509 F.2d 64 (2d Cir. 1974) .................................................... 17

*In re Marvel Ent. Grp., Inc.*,
    254 B.R. 817 (D. Del. 2000) ................................................. 23

*Educ. Testing Servs. v. Katzman*,
    793 F.2d 533 (3d. Cir. 1986) ................................................ 21

*Kitchen & Bath Concepts of Pittsburgh, LLC v. Eddy Homes, Inc.*,
    No. CV 16-589, 2016 WL 7404559 (W.D. Pa. Dec. 22, 2016) ............ 25

*Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 705 n.5 (3d Cir. 2004) ............ 5

*Kundratic v. Thomas*,
    407 F. App'x 625 (3d Cir. 2011) ......................................... 24

*Lieb v. Topstone Indus., Inc.*,
    788 F.2d 151 (3d Cir. 1986) ................................................ 25

*Lowe v. Loud Recs.*,
    No. CIV. A. 01-1797, 2004 WL 527831 (E.D. Pa. Mar. 17, 2004) ....... 26

*Marino v. Usher*,
    22 F. Supp. 3d 437 (E.D. Pa. 2014) ..................................... 10

*Marino v. Usher*,
    No. 11-6811, 2014 WL 12606151 (E.D. Pa. Nov. 3, 2014) ............ 26

*Mazer v. Stein*,
    347 U.S. 201 (1954) ............................................................ 12

*McDonald v. K-2 Indus., Inc.*,
    108 F. Supp. 3d 135 (W.D.N.Y. 2015) ................................. 14

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) ................................................. 8

*Nicassio v. Viacom Int'l, Inc.*,
    309 F. Supp. 3d 381 (W.D. Pa. 2018) ................................. 19

*Nicassio v. Viacom Int'l, Inc.*,
    776 F. App'x 761 (3d Cir. 2019) ......................................... 17

*Parham v. Pepsico, Inc.*,
  927 F. Supp. 177 (E.D.N.C. 1995) ............................................................... 14

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ............................................................................. 9

*Phillips v. County of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ........................................................................... 8

*Pickett v. Prince*,
  207 F.3d 402 (7th Cir. 2000) ........................................................................ 23

*Porto v. Guirgis*,
  659 F. Supp. 2d 597 (S.D.N.Y. 2009) .......................................................... 14

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010) ...................................................................................... 10

*Revell v. Port Auth. of N.Y. & N.J.*,
  598 F.3d 128 (3d Cir. 2010) ........................................................................... 8

*Rocks v. City of Philadelphia*,
  868 F.2d 644 (3d Cir. 1989) ........................................................................... 8

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003) ........................................................................ 12

*Shane v. Fauver*,
  213 F.3d 113 (3d Cir. 2000) ......................................................................... 24

*Skinner v. Switzer*,
  562 U.S. 521 (2011) ........................................................................................ 8

*T.B. Proprietary Corp. v. Sposato Builders, Inc.*,
  No. CIV. A. 94-6745, 1996 WL 488940 (E.D. Pa. Aug. 23, 1996) ........................................ 26

*Tanikumi v. Walt Disney Co.*,
  616 F. App'x 515 (3d. Cir. 2015) .................................................................. 19

*Tanksley v. Daniels*,
  902 F.3d 165 (3d Cir. 2018) ................................................................... passim

*Tompkins Graphics, Inc. v. Zipatone, Inc.*,
  No. 82-5438, 1983 WL 398 (E.D. Pa. Aug. 15, 1983) ............................. 11, 19

*TransWestern Publ'g Co. LP v. Multimedia Mktg. Assocs., Inc.*,
  133 F.3d 773 (10th Cir. 1998) ...................................................................... 17

*Visual Commc'ns, Inc. v. Assurex Health, Inc.*,
   No. 14-3854, 2014 WL 4662474 (E.D. Pa. Sept. 18, 2014)................................................... 20

*Walker v. DC Comics, Inc.*,
   67 F. App'x 736 (3d Cir. 2003) ........................................................................ 22, 23

*Walker v. Kemp*,
   No. 2:21-0528-KSM, __ F. Supp. 3d __, 2022 WL 605292 (E.D. Pa. Feb. 28, 2022) 20, 21, 22,
   25

*Winstead v. Jackson*,
   509 F. App'x 139 (3d Cir. 2013) .......................................................................... 16

*Wizkids Creations Co. v. SEPTA Transp.*,
   No. Civ. A. 02-3249, 2003 WL 21250661 (E.D. Pa. Feb. 27, 2003) ................................ 20, 22

*Wolstenholme v. Hirst*,
   271 F. Supp. 3d 625 (S.D.N.Y. 2017) ................................................... 11, 14, 17, 19

## Statutes

17 U.S.C. § 101 ................................................................................................ 4, 14, 22

17 U.S.C. § 102 ................................................................................................ 10, 11

17 U.S.C. § 102(b) ............................................................................................... 6, 12

17 U.S.C. § 103 .................................................................................................. 2, 5

17 U.S.C. § 103(b) ................................................................................................. 11

17 U.S.C. § 106 .................................................................................................. 5, 23

17 U.S.C. § 201(b) ............................................................................................ 2, 4, 22

17 U.S.C. § 411(a) .............................................................................................. 3, 10

17 U.S.C. § 501 .................................................................................................... 22

17 U.S.C. § 505 .............................................................................................. 3, 25, 26

## Rules & Regulations

Fed. R. Civ. P. 12(b)(6)......................................................................................... 3, 9, 24

Fed. R. Civ. P. 15(a) ............................................................................................... 28

Fed. R. Civ. P. 8(a)(2)............................................................................................... 8

**Other Authorities**

2 William F. Patry, *Patry on Copyright* § 4:17 (2022)................................................................. 10

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[A][4] ........................ 17

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[B][2].......................... 17

Compendium of U.S. Copyright Practices § 905........................................................................ 10

Defendant Fanatics, Inc.[1] ("Fanatics") respectfully submits this Memorandum in support of its Motion to Dismiss the First Amended Complaint.

## INTRODUCTION

The First Amended Complaint ("FAC") filed by Plaintiff William Grondin asserts copyright ownership in a "two dimensional reproduction of the Stanley Cup in lucite with a puck-shape cavity containing melted ice," Dkt. 13-2 at 2, ¶ 6b (the "Work"), which is the subject of a 1998 copyright registration. Dkt. 13-2 (the "Registration"). Mr. Grondin does not own any rights in the shape of the Stanley Cup itself, nothing original exists in the round shape of a common hockey puck, and the *idea* of a cavity containing melted ice is unprotectable under copyright law. Thus, Mr. Grondin likely owns no valid copyrights in the Work, despite the existence of the Registration.

Even assuming that *any* original, protectable expression exists in the Work, Mr. Grondin's copyright would be considered "thin" and entitled only to the narrowest protection.[2] Once the unprotectable elements are excluded from his Work, a side-by-side comparison immediately reveals that *none* of the Fanatics memorabilia accused of infringement is "substantially similar" to the Work. As such, the lawsuit should be dismissed.

Even if the Court does not dismiss the FAC for lack of substantial similarity, it should dismiss the FAC for two other independent and alternative reasons. First, the FAC is insufficient because it contains nothing more than vague and conclusory allegations of "access." Indeed, Mr. Grondin primarily suggests that the Court should simply infer that Fanatics had access to his Work

---

[1] Although Plaintiff named "Fanatics, Inc." as the defendant, the company now operates as Fanatics, LLC.

[2] The Supreme Court refers to copyrights as "thin" when they are asserted in works that primarily comprise unprotectable elements. *See, e.g., Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1198 (2021) ("[W]here copyrightable material is bound up with uncopyrightable material, copyright protection is 'thin'") (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 349 (1991)).

because (a) the Fanatics products are "strikingly similar" to the Work; and (b) the Fanatics products are NHL memorabilia that contain melted ice. Yet, "striking similarity" is a much higher standard than "substantial similarity": striking similarity requires that the accused product be a *virtually identical* copy of the copyrighted work. Here, a side-by-side comparison shows that the Work is not even "substantially" similar to the Fanatics products and, as a matter of law, therefore, cannot be "strikingly" similar. And the generalized allegation that both parties offered NHL-related memorabilia containing melted ice is not sufficient to show that Fanatics had access to or "copied" Mr. Grondin's Work. Because access cannot be inferred under these circumstances, the FAC should also be dismissed on this basis.

Second, the FAC fails to provide sufficient factual support for Mr. Grondin's bare allegation that he is the owner of a valid copyright registration for the Work. The Registration states that the Work is a "work made for hire," but the FAC fails to allege how or even that Mr. Grondin obtained ownership in this "work made for hire." By law, copyright in a work made for hire (like the Work here) is owned by the company or person who hired Mr. Grondin to create it – not by Mr. Grondin. 17 U.S.C. § 201(b). The Registration also states that the Work is a derivative work. Under copyright law, Mr. Grondin does not own any copyrights in any preexisting work – only the elements that are original to him. 17 U.S.C. § 103. Yet, the FAC fails to allege which elements of the Work, if any, are original to Mr. Grondin and not part of the preexisting work upon which it is based. In short, the FAC does not adequately plead an essential element of Mr. Grondin's copyright claim – ownership of a valid copyright – because it fails to allege sufficient facts establishing (a) his ownership of a work made for hire and (b) any original expression in his derivative work. On that independent basis, the FAC also should be dismissed.

Finally, given that Mr. Grondin has already had a chance to cure his defective claims and because no amendment of the pleadings can change the appearance of the Work or that of the accused Fanatics products, the Court should dismiss the FAC with prejudice.

For each of these reasons, the Court should dismiss the FAC with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court also should award Fanatics its reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## **BACKGROUND**

Mr. Grondin alleges that in 1996 he designed a collectible comprised of "a sculpture in the approximate outline of the Stanley Cup" with "a hockey-puck shaped piece with a hollow cavity" that is filled with melted "[i]ce from the rink of prominent hockey games" embedded "in the Stanley Cup." Dkt. 13 ¶ 8. Mr. Grondin's registration describes the Work as a "two dimensional reproduction of the Stanley Cup in lucite with a puck-shape cavity containing melted ice." Dkt. 13-2 at 2, ¶ 6b.[3]

Although the FAC attaches as Exhibit A photographs of three products that Plaintiff alleges were named "Slice of the Ice," only *one* of those products matches the description in the Registration and the FAC and is from 1996. Thus, the only Work covered by the Registration is the collectible depicted below:[4]

---

[3] Of course, the Work is not in fact "two-dimensional," but Fanatics accepts that language in the Registration (for purposes of this Motion) as referencing the fact that it is flat on the front and back instead of being cylindrical like the real Stanley Cup trophy.

[4] There are two photographs of versions of the Work attached to the FAC. One is visible in its entirety, but it bears a date of June 7, 2004, and purports to contain ice from the 2004 Stanley Cup Finals (*see* Dkt. 13-1 at 4), and thus cannot be the work that was registered in 1996. The only 1996 work depicted in Exhibit A is cut off at the top (Dkt. 13-1 at 2). The color image of the full Work depicted here was provided to Fanatics' counsel in 2019 by Plaintiff's former counsel. The Third Circuit has held that district courts "are not limited to the four corners of the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (citation omitted). The unregistered products depicted in Exhibit A (Dkt. 13-1 at 1, 3, 4) are not relevant, because only *registered* works can form the basis of a copyright infringement claim. 17 U.S.C. § 411(a). Moreover, Mr. Grondin's registration appears on a Form VA (Dkt. 13-2), and the instructions for a Form VA state: "This form may be used to register one published work or one unpublished work. This form cannot be used to register a 'collection' of two or more works." Form VA For a Work of the Visual Arts, United States Copyright Office,



The Registration shows that the Work is a "work made for hire." Dkt. 13-2 ¶ 2a. The Amended Complaint, however, does not allege who hired Mr. Grondin to create the Work.[5] In the Registration, Mr. Grondin also represented to the Copyright Office that the Work is a derivative work "based on the Stanley Cup." Dkt. 13-2 ¶ 6a. Mr. Grondin does not (and cannot) claim copyright in the Stanley Cup.

The Copyright Act defines a derivative work as "a work based upon one or more preexisting works." 17 U.S.C. § 101. Here, the preexisting work is the Stanley Cup, depicted below:



---

https://www.copyright.gov/forms/formva.pdf (last visited August 8, 2022). Therefore, the registration only covers a *single* work, not all of the variants attached to the FAC.

[5] "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author . . . and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b). Though Mr. Grondin avers that he created the Work "with licenses from the NHL," Dkt. 13 ¶ 9, he does *not* allege that he owns all of the rights comprised in the copyright for the Stanley Cup.

The Stanley Cup is a famous trophy awarded to the National Hockey League's ("NHL") championship team each year (Dkt. 13 ¶ 6), and the intellectual property in the Stanley Cup is owned by the NHL.[6]

The NHL thus owns the "exclusive rights . . . to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106. Additionally, "copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b). In other words, by law, Mr. Grondin does not own any copyrights in the "preexisting material," namely the shape of the Stanley Cup, and his claim to copyrights is limited to any original expression in the Work that he "contributed." The FAC, however, is utterly devoid of any allegations concerning what original expression, if any, he contributed.

Fanatics sells a wide range of NHL memorabilia, including items relating to the Stanley Cup playoff games and championship. Some of Fanatics' NHL-related memorabilia are included in Exhibit C to the FAC. Dkt. 13-3. The FAC alleges that Exhibit C contains "examples of Defendant's infringing works," but fails to allege which of the depicted products allegedly infringe Mr. Grondin's claimed rights in the Work. Construing the FAC as favorably as possible to Mr. Grondin, he appears to be accusing three licensed Fanatics products of infringement: (1) the Crystal Puck Filled with Ice, (2) the Crystal Stanley Cup Filled with Ice, and/or (3) the Sublimated Plaque with Game-Used Ice (Dkt. 13-3 at 1-7, the "Fanatics Products"):[7]

---

[6] The NHL owns numerous federal trademark registrations covering the shape of the Stanley Cup, including, for example, Reg. Nos. 1793016, 3922822, & 3922838. The trademark registrations are accessible on the U.S. Patent & Trademark Office's ("PTO") TESS system (https://www.uspto.gov/trademarks/search), and the Court may take judicial notice of their existence at the motion to dismiss stage. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 705 n.5 (3d Cir. 2004) (holding that courts may take judicial notice of public records such as those available on the PTO website); *Bath Auth., LLC v. Anzzi LLC*, No. 18-00834, 2018 WL 5112889, at *4 (E.D. Pa. Oct. 19, 2018) (taking judicial notice of trademark registration at motion to dismiss stage).
[7] Other NHL-related products appear in Exhibit C, such as hats and T-shirts, but none of those can be viewed as a clear collectible incorporating the idea of a hollow cavity filled with melted ice.

| Crystal Puck | Crystal Stanley Cup | Sublimated Plaque |
|---|---|---|
|  | | |

Because, as discussed above, Mr. Grondin cannot own copyrights in the shape of the Stanley Cup, and because *ideas* such as filling a hockey puck with melted ice from a specific rink or making a clear lucite collectible are not protectable under copyright law,[8] it is difficult to identify any "original expression" in the Work at all.

That being said, and construing the FAC most favorably to Mr. Grondin, at most the Work is "original" to the degree it contains a specific expression of jagged edges that makes the lucite look like it was cut from ice. Yet, *none* of the Fanatics Products contains this jagged-edges element and *none* of the Fanatics Products is a "two dimensional reproduction of the Stanley Cup in lucite with a puck-shape cavity containing melted ice."

## PROCEDURAL HISTORY

Mr. Grondin filed his original Complaint on May 18, 2022. Dkt. 1 (the "Complaint"). Fanatics timely moved to dismiss the Complaint on July 15, 2022 (Dkt. 12, the "Motion to Dismiss") on three grounds: (1) the Fanatics Products are not substantially similar to the Work as a matter of law; (2) the Complaint did not adequately allege facts to infer access; and (3) the

---

[8] "In no case does copyright protection for an original work of authorship extend to any idea, . . . concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).

Complaint did not include factual allegations establishing Mr. Grondin's ownership of the Work concededly "made for hire" or any original expression in his "derivative work."

Rather than respond to the Motion, Mr. Grondin filed the FAC (Dkt. 13) on the date that his opposition was due. The FAC fails to cure the deficiencies identified by the Motion and instead merely added (1) a paragraph on the history of the Stanley Cup (Dkt. 13 ¶ 6), (2) a paragraph that confirms the Work is a "sculpture in the approximate outline of the Stanley Cup" (*id.* ¶ 8); (3) a sentence stating that Mr. Grondin created the Work with licenses from the NHL (*id.* ¶ 9); (4) a paragraph suggesting that copying "is evidenced" by the fact that both parties made NHL memorabilia that includes melted rink ice, that both the Work and the Fanatics Products include a certificate of authenticity, and that both the Work and the Fanatics Products "commemorate the same annual hockey games" (*id.* ¶ 19), and (5) one additional photo in Exhibit A of a 2004 version of Mr. Grondin's "Slice of the Ice" products (Dkt. 13-1 at 4).

Because these amendments do not cure the fatal flaws Fanatics identified in its first Motion to Dismiss, Fanatics moves to dismiss with prejudice the FAC on the same three bases that Fanatics moved to dismiss the original Complaint.

## LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]o 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted).

The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation omitted).

In evaluating the sufficiency of the FAC, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). Also, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

The Court, however, "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted)). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## ARGUMENT

To prevail on a claim for copyright infringement, plaintiffs must show (1) ownership of a valid copyright in their asserted work and (2) copying of the original elements of that work. *Feist*

*Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 360, 361 (1991); *see also Tanksley v. Daniels*, 902 F.3d 165, 172-73 (3d Cir. 2018). "Copying" exists only if the plaintiff can show that: (1) the defendant had access to the plaintiff's work; and (2) the defendant's work is substantially similar to the protectable expression in plaintiff's work. *Tanksley*, 902 F.3d 173-74; *see also Apple Corps. Ltd. v. Button Master, P.C.P. Inc.*, No. CIV. A. 96-5470C, 1998 WL 126935, at *11 (E.D. Pa. Mar. 19, 1998). Here, Mr. Grondin cannot adequately allege that the Fanatics Products are "substantially similar" to whatever protectable expression may possibly exist in the Work. He also does not adequately allege ownership of a valid copyright in the Work or that Fanatics had access to his Work before designing the Fanatics Products. Therefore, for all three separate and independent reasons, his copyright infringement claim fails as a matter of law.

## I.     The Work and the Fanatics Products Are Not Substantially Similar

Assessing substantial similarity is a two-step process. First, the Court must evaluate the Work to identify (and exclude) all unprotectable elements of the Work. *Tanksley*, 902 F.3d at 175 ("In works that involve a mix of protected and unprotected elements, as is the case here, the first step is to identify and exclude from the substantial similarity analysis any unprotected material."). Second, the Court "performs a side-by-side comparison of the works and, *excluding any unprotectable elements*, assesses whether the two works are substantially similar." *Id.* at 174 (emphasis added) (noting that the comparison is from the perspective of a "lay-observer" looking at images of the works) (citation omitted)). The Third Circuit has held that the Court may properly conduct this two-step analysis at the motion-to-dismiss stage because "no discovery or fact-finding is typically necessary, because 'what is required is only a visual comparison of the works.'" *Id.* at 172 (quoting *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010)). A plaintiff's failure to satisfy this objective, extrinsic test at the pleading stage requires dismissal as a matter of law. *See id.* at 177.

**A.**     **The Work Contains Little to No Original, Protectable Expression and Thus is Entitled, at Most, to Only Narrow or "Thin" Copyright Protection.**

Copyright law protects only *original* works of authorship. 17 U.S.C. § 102. And, while "original authorship may be expressed in many ways, such as carving, cutting, molding, casting, shaping, or otherwise processing material into a three-dimensional work of sculpture," "[m]erely bringing together only a few standard forms or shapes with minor linear or spatial variations does not satisfy this [originality] requirement." Compendium of U.S. Copyright Practices § 905; *see also* 2 William F. Patry, *Patry on Copyright* § 4:17 (2022).

Although the FAC fails to plead them specifically, it appears that the Work contains five elements: (1) a "two dimensional" lucite trophy in the approximate outline of the Stanley Cup; (2) NHL trademarks, including the STANLEY CUP word mark and the design marks of the Florida Panthers (Reg. No. 1875931) and Colorado Avalanche (Reg. No. 21463061), the two NHL teams that played in the 1996 championship; (3) a lucite hockey-puck-shaped piece embedded in the lower third of the Stanley Cup outline; (4) the idea that the hockey puck is hollow and contains melted ice from a specific rink and game; and (5) jagged edges carved into the lucite suggesting "ice."[9]



---

[9] As noted previously, the unregistered products depicted in Exhibit A (Dkt. 1-4 at 1, 3) have no bearing on the substantial similarity analysis. 17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Marino v. Usher*, 22 F. Supp. 3d 437, 445-446 (E.D. Pa. 2014) (granting summary judgment to defendant because plaintiff's registration only covered the musical composition and plaintiff did not separately register his sound recordings).

An analysis of these elements reveals that – at most, construing the pleading in the light most favorable to Mr. Grondin at this motion-to-dismiss stage – only the fifth element arguably could be entitled to copyright protection.

The first element (a "two dimensional" reproduction in the "approximate outline" of the Stanley Cup) is unprotectable because the Registration admits that the Work is a derivative work "based on the Stanley Cup." Dkt. 13-2 ¶ 6a. By law, Mr. Grondin does not own any copyrights in that preexisting work, 17 U.S.C. § 103(b), and his reproduction of that preexisting work in a new medium (lucite) is not "original" as a matter of law. *See Durham Indus. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980) (affirming that reproducing copyrighted Disney characters in plastic was not copyrightable "even though the adaptation of the preexisting works to this medium undoubtedly involved some degree of manufacturing skill"); *Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 635, 638 (S.D.N.Y. 2017) ("[D]erivative works which simply cast a prior work in a new medium are not original").

The second element (NHL trademarks) is likewise unprotectable because those trademarks are owned by third parties, not Mr. Grondin.[10]

The third element (the shape of a hockey puck) is unprotectable because it is not original to Mr. Grondin. 17 U.S.C. § 102. Acknowledging that he merely copied the preexisting geometric shape of a hockey puck, Mr. Grondin stated in the Registration that the Work contains a "puck-shape cavity," Dkt. 13-2 ¶ 6b, and in the FAC that "[e]mbedded in the Stanley Cup is a hockey-puck shaped piece with a hollow cavity," Dkt. 13 ¶ 7. The law is clear that un-original shapes are not protectable elements. *See Tompkins Graphics, Inc. v. Zipatone, Inc.*, No. 82-5438, 1983 WL 398, at *2 (E.D. Pa. Aug. 15, 1983) ("[B]asic geometric shapes have long been in the public

---

[10] As noted *supra* in footnote 4, the Court may take judicial notice of the NHL's trademark registrations.

domain and therefore cannot be regulated by copyright."). The Ninth Circuit, for example, explained "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003); *accord Tanksley*, 902 F.3d at 175 (stating that "[i]n a film about a college fraternity, . . . 'parties, alcohol, co-eds, and wild behavior' would all be considered *scènes à faire* and not valid determinants of substantial similarity"). Nothing could be more "standard, stock, or common" to the game of hockey than the shape of the puck, and a single party cannot own for copyright purposes the round, disk shape of a hockey puck.

The fourth element (the idea that the hockey puck is hollow and contains melted ice from a particular rink and game) is not protectable because these are merely *ideas* and not an original *expression* of those ideas. The Copyright Act states unequivocally: "In no case does copyright protection for an original work of authorship extend to any idea, . . . concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Here, the Work contains a hollowed-out lucite hockey puck filled with melted ice, but nothing original exists in its particular *expression* of that *idea*. Instead, it is nothing more than a round cavity within the round puck. *See Mazer v. Stein*, 347 U.S. 201, 217 (1954) ("Unlike patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea – not the idea itself.").

Courts routinely reject attempts to protect ideas through copyright law. For example, in *Arthur v. American Broadcasting Cos., Inc.*, 633 F. Supp. 146 (S.D.N.Y. 1985), the plaintiff was an artist who had created a five-ring twisted-brass sculpture that looked like the Olympic rings but included the letters "a," "b," and "c" as the top three rings:



He brought a copyright infringement claim against the ABC television network, which was using an arguably similar logo in connection with its broadcast of the Olympics:



Noting that ideas are unprotectable as a matter of copyright law, the district court held that "plaintiff could not acquire a monopoly on the *idea* of the combination of the five rings, but rather at most a right to his particular sculptural execution of this idea." *Id.* at 148 (emphasis in original). Then, properly excluding the artist's unprotectable idea from the substantial similarity analysis, the court rejected the plaintiff's copyright claim because the works were "as a matter of law, insufficiently similar." *Id.*

Here, the Court should likewise reject the idea of water from a particular place and time inside of a hollow puck to be copyrightable. *See, e.g.*, *Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525, 529-30 (9th Cir. 1987) (affirming summary judgment for defendant because only common features between plaintiff's and defendant's video games were *ideas* inherent to video games); *Digit. Dream Labs, LLC v. Living Tech. (Shenzhen) Co.*, No. 2:20-CV-01500-CCW, 2022

WL 597358, at *7 (W.D. Pa. Feb. 28, 2022) (concluding that the concepts that a robot that could interact with the world and fit on a table were unprotectable ideas); *Wolstenholme*, 271 F. Supp. 3d at 638 (holding that pill-inspired jewelry is an unprotectable idea); *McDonald v. K-2 Indus., Inc.*, 108 F. Supp. 3d 135, 142-43 (W.D.N.Y. 2015) (granting motion to dismiss in case involving holiday-themed collectibles on basis that "the overwhelming majority of plaintiff's copyrighted designs represent her expression of a 'basic idea' (or combination of basic ideas)" relating to Christmas); *Porto v. Guirgis*, 659 F. Supp. 2d 597, 610-13 (S.D.N.Y. 2009) (granting motion to dismiss or for summary judgment on ground that allegedly similar content between plaintiff's novel and defendant's play were unprotectable ideas); *Parham v. Pepsico, Inc.*, 927 F. Supp. 177, 179 (E.D.N.C. 1995) (granting motion to dismiss copyright claims challenging "crystal" Pepsi, noting "the mere idea for a clear soft drink cannot be the subject of copyright protection").

Moreover, Mr. Grondin cannot assert copyright in a cavity that can hold melted ice, because such a "utilitarian" aspect of a sculpture is unprotectable by law. 17 U.S.C. § 101 (noting that sculptural works are protectable "insofar as their form but not their mechanical or utilitarian aspects are concerned" and that the protectable sculptural features of a product must be "identified separately from, and are capable of existing independently of, the utilitarian aspects of the article").

The fifth and final element (jagged edges along the sides of the Stanley Cup shape) likely is also unprotectable, as it is either merely an "idea" of carving plastic to look like ice, or as something entirely unoriginal and common in the context of *ice* hockey. Construing the FAC in the light most favorable to Mr. Grondin at this stage, however, Mr. Grondin may be able to assert some limited originality in the *particular expression* of the jagged edges carved in the lucite and visible in the Work.

It is also conceivable that Mr. Grondin could argue that, even though each of the individual elements is unprotectable, he owns copyright in his purportedly original *arrangement* and *combination* of all of these elements together. The Supreme Court explained that, under such circumstances, the protection afforded the copyright owner is extremely limited:

> This inevitably means that the copyright in a factual compilation is thin. Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement . . . . [N]o matter how much original authorship the work displays, the facts and ideas it exposes are free for the taking . . . . [T]he very same facts and ideas may be divorced from the context imposed by the author, and restated or reshuffled by second comers, even if the author was the first to discover the facts or to propose the ideas.

*Feist Publ'ns*, 499 U.S. at 349 (first alteration added) (citation omitted); *see also id.* at 350-51 ("A factual compilation is eligible for copyright if it features an original selection or arrangement . . . but the copyright is limited to the particular selection or arrangement."), 359 ("Even if a work qualifies as a copyrightable compilation, it receives only limited protection."). Here, if Mr. Grondin asserts copyrights in the overall arrangement of elements in his "two dimensional reproduction of the Stanley Cup in lucite with a puck-shape cavity containing melted ice," his copyrights would be limited to the precise expression of that particular combination of elements reflected in his registered collectible as a whole:



In summary, Mr. Grondin's copyright in the Work should be considered at most "thin," because he is asserting copyright in a derivative work that is comprised of five elements—four of which are unprotectable. The copyright protection – if any – would be limited to (a) the particular expression of jagged edges along the sides of the "two dimensional" "approximate outline of the Stanley Cup" shape, or (b) the particular arrangement of multiple unprotectable elements comprising the Work as a whole. As discussed in the following Section I.B., because Mr. Grondin's copyrights are so limited, he cannot prove substantial similarity as a matter of law.

### B. The Fanatics Products Are Not Substantially Similar to Any Potentially Protectable Expression Embodied in the Work

The next step in the "objective, extrinsic" test of substantial similarity – after excluding all unprotectable elements of the Work – is to perform a "side-by-side comparison" to assess whether the Fanatics Products are substantially similar to the protectable elements of the Work. *Tanksley*, 902 F.3d at 174. In performing the comparison, the Court must refrain from comparing *ideas* (e.g., the fact that they both contain melted ice) and instead must compare only the specific protectable *expression* in the Work with the *expression* of the Fanatics Products. *See Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc.*, 575 F.2d 62, 65 (3d Cir. 1978) ("Since copyrights do not protect thematic concepts, the fact that the same subject matter may be present in two [works] does not prove copying or infringement."). The Third Circuit has long been clear that a claim of substantial similarity must be based on more than "elements that flow predictably from a general idea," as those elements are not protected expression. *Tanksley*, 902 F.3d at 175. *Accord Franklin Mint Corp.*, 575 F.2d at 66 (affirming district court's finding that though two paintings depicted the same *idea* of cardinals, there was no infringement because the *expressions* of the cardinals were not similar); *Winstead v. Jackson*, 509 F. App'x 139, 143 (3d Cir. 2013) (noting that copyright law

provides no protection for "elements that would be expected when two works express the same idea or explore the same theme") (citation omitted).[11]

Additionally, here the bar for Mr. Grondin to prove copyright infringement is extraordinarily high given the thin copyright interest he has in the Work. As the leading treatise explains, "if substantial similarity is the normal measure required to demonstrate infringement, *supersubstantial* similarity must pertain when dealing with works subject to only thin protection." 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[A][4] at 13-71 to 13-72 (hereinafter "*Nimmer*") (emphasis added); *see also Satava*, 323 F.3d at 812 (noting in case of a sculptural work the plaintiff "possesses a thin copyright that protects against only *virtually identical* copying" (emphasis added)); *TransWestern Publ'g Co. LP v. Multimedia Mktg. Assocs., Inc.*, 133 F.3d 773, 776 (10th Cir. 1998) (applying "supersubstantial similarity" test in case of thin copyright in selection and arrangement of otherwise unprotectable elements (citation omitted)).

As noted above, the FAC fails to identify with particularity the specific Fanatics Products accused of infringement. Nevertheless, regardless of which Fanatics Product is compared, *none* is made of lucite[12] and *none* contains *any* jagged edges. That alone mandates dismissal. *Nicassio v. Viacom Int'l, Inc.*, 776 F. App'x 761, 766 (3d Cir. 2019) (affirming dismissal because any similarities were not of protectable elements of plaintiff's work).

Even if Mr. Grondin were to claim some protection in his *arrangement* of the otherwise unprotectable elements into the overall Work, none of the Fanatics Products is substantially similar

---

[11] This is not unique to the Third Circuit. *See, e.g., Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64, 65-66 (2d Cir. 1974) (copyright on a gold pin shaped like a turtle did not preclude others from manufacturing turtle pins); 4 *Nimmer* § 13.03[B][2] ("[A]n element of an infringement case is that plaintiff must show that defendant's works are substantially similar to elements of plaintiff's work that are *copyrightable* or protected by copyright.").

[12] Mr. Grondin fails to allege that any of the Fanatics Products are made of lucite. Moreover, the Fanatics Products are made of glass. In *Wolstenholme*, the court found that the dissimilarity in the materials of the works to weigh in favor of finding no substantial similarity. 271 F. Supp. 3d at 638 ("[T]he Hirst Necklace is different from Hail Mary in numerous ways . . . Hail Mary is cast in silver, and the Hirst necklace is cast in gold."). The Court may consider this fact as it is integral to the FAC. *Tanksley*, 902 F.3d at 172.

to the Work, much less "supersubstantially" similar. To facilitate the Court's side-by-side comparison, Fanatics provides the chart below:[13]

| The Work | Accused Product | Comparison |
|---|---|---|
|  |  | Fanatics' Crystal Puck is a hollow glass hockey puck nestled in a padded display box.<br><br>The Work is lucite and in the shape of the Stanley Cup with jagged edges and is freestanding vertically.[14] |
|  |  | Fanatics' Crystal Stanley Cup is a cylindrical and smooth-sided miniature glass Stanley Cup without any embedded hockey puck.<br><br>The Work is lucite and not cylindrical, is much larger, features jagged edges, and has an embedded hockey puck. |

---

[13] Enlarged versions of the Fanatics Products are attached as Exhibits 1-3 to this Memorandum.
[14] As noted above, the hollow hockey puck element of the Work is unprotectable.

| The Work | Accused Product | Comparison |
|---|---|---|
|  |  | The Sublimated Plaque is a plaque featuring, on the left, a photograph of an NHL player, and on the right the NHL's "Stanley Cup Champions" trademark above a dome snow globe-shaped container with melted rink ice.<br><br>The Work contains no plaque, no player photograph, and no snow globe-shaped container. |

The chart shows that numerous material differences exist between any potentially protectable expression in the Work and the designs or arrangement of the Fanatics Products. As a result, substantial similarity does not exist as a matter of law, and the Court should dismiss Mr. Grondin's claims. *See, e.g.*, *Tanksley*, 902 F.3d at 177 (affirming dismissal of complaint with prejudice); *Tanikumi v. Walt Disney Co.*, 616 F. App'x 515, 518 (3d. Cir 2015) (affirming dismissal of copyright infringement claim involving purported similarity between plaintiff's books and the movie *Frozen*); *Digit. Dream Labs, LLC*, 2022 WL 597358, at *8-9 (granting motion to dismiss where the sculptural works at issue shared the same unprotectable idea but were not substantially similar in their specific combination of protectable artistic features); *Nicassio v. Viacom Int'l, Inc.*, 309 F. Supp. 3d 381, 389 (W.D. Pa. 2018) (granting defendants' motion to dismiss after comparing plaintiff's book to defendants' book and film); *Tompkins Graphics, Inc.* 1983 WL 398, at *2 (dismissing copyright claims as a matter of law because the "overall arrangements" of the parties' works differed); *Wolstenholme*, 271 F. Supp. 3d at 639 (granting motion to dismiss, as "[a]ny similarity of the [works was] attributable to the fact that both artists were working from the same basic design premise"); *Arthur*, 633 F. Supp. at 148 (finding no

19

substantial similarity after unprotectable idea of five rings was excluded from the side-by-side comparison).

## II.   In Addition to A Clear Lack of Substantial Similarity, the FAC Also Suffers From Other Defects Warranting Dismissal.

### A.   The FAC Fails to State a Claim for Copyright Infringement Because It Does Not Establish That Fanatics Had Access to the Work

To establish a claim for copyright infringement, Mr. Grondin must plausibly allege that Fanatics had access to the Work prior to creating the Fanatics Products. *Walker v. Kemp*, No. 2:21-0528-KSM, __ F. Supp. 3d __, 2022 WL 605292, at *3 (E.D. Pa. Feb. 28, 2022). Because Mr. Grondin fails to allege (and, indeed, cannot allege) any facts that make it plausible that Fanatics had access to the Work, his FAC should be dismissed. *See Cianelli v. Nourison Indus., Inc.*, No. 3:19-cv-19147(FLW), 2020 WL 4882500, at *1 (D.N.J. Aug. 20, 2020) (dismissing complaint on access grounds); *Visual Commc'ns, Inc. v. Assurex Health, Inc.*, No. 14-3854, 2014 WL 4662474, at *5 (E.D. Pa. Sept. 18, 2014) (conclusory and speculative allegations regarding access warranted dismissal of copyright infringement claim); *Wizkids Creations Co. v. SEPTA Transp.*, No. Civ. A. 02-3249, 2003 WL 21250661, at *3 (E.D. Pa. Feb. 27, 2003) (dismissing complaint for failure to allege access).

Mr. Grondin first attempts to plead access by: (1) noting that both parties offer NHL memorabilia containing melted rink ice; and (2) baldly asserting that Fanatics "obtained physical possession of or otherwise viewed Plaintiff's protected work . . . [and] [t]hat Defendant copied Plaintiff's protected work is evidenced by the striking similarities between the copyrighted work and the infringing works." Dkt. 13 ¶ 19.

The mere fact that both parties made NHL products that contain melted rink ice, included certificates of authenticity with the products, or came from the same hockey games does not demonstrate that Fanatics had access to the particular expression of that idea that is alleged to be

embodied in Mr. Grondin's Work. Mr. Grondin alleges no facts describing *how* or *when* Fanatics purportedly obtained possession of or viewed the Work. In the absence of such factual allegations, the FAC fails the *Twombly* pleading standard. In *Walker v. Kemp*, this Court found that more fulsome allegations that a protected work was marketed at trade shows and generally available on Amazon and '"made its way into the possession' of Defendants" were insufficient as a matter of law. 2022 WL 605292, at *1 (citation omitted) (dismissing claim pursuant to Rule 12(b)(6)). Mr. Grondin's allegations, even as amended, are more bare than those rejected in *Walker v. Kemp*, and the Court here should dismiss the FAC for the same reason. *See also Cianelli*, 2020 WL 4882500, at *4 (holding that plaintiff's allegations that defendant copied and distributed his paintings were "precisely the type of 'unadorned, the-defendant-unlawfully-harmed-me accusation'" that the court has to reject because the complaint contained "no factual allegations regarding how [defendant] accessed the paintings in the first place" (citation omitted)).

Mr. Grondin alternatively asks the Court to infer access on the basis that the Work and the Fanatics Products are "strikingly similar." But "striking similarity" is a more stringent test than substantial similarity. To satisfy this test, Plaintiff must show that two works are "so strikingly similar . . . as to lead to *no other conclusion* [than] that they were copied." *Cottrill v. Spears*, No. CIV.A. 02-3646, 2003 WL 21223846, at *5 n.4 (E.D. Pa. May 22, 2003) (alteration in original) (quoting *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 541 (3d. Cir. 1986)), *aff'd*, 87 F. App'x 803 (3d Cir. 2004), *as amended on reh'g* (June 2, 2004). As discussed above in Section I, the Work and the Fanatics Products are not even *substantially* similar, much less *strikingly* similar to each other.[15] Thus, any inference of access based on similarity would be unreasonable.

---

[15] Mr. Grondin avers the following "striking" similarities: (1) use of "rink ice from NHL hockey games to deposit in the works . . ." [(2)] "practice of providing consumers with a certificate of authenticity attesting as to which game the ice was taken from;" and [(3)] that Defendant's works commemorate the same annual hockey games as Plaintiff's did." Dkt. 13 at ¶ 19. All of these "similarities" are merely *ideas* and, significantly, are all *extrinsic* to the Work itself,

As a result, the FAC should be dismissed for failure to meet the access requirement. *See Walker*, 2022 WL 605292, at *5 (dismissing claim because plaintiff "has not even shown that the works are 'substantially similar,' so he certainly has not shown that the works are 'strikingly similar'); *Wizkids*, 2003 WL 21250661, at *4 (dismissing claim and refusing to infer access where the works were not substantially similar and thus could not be strikingly similar); *see also Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 330 (S.D.N.Y. 2021) (dismissing claim for lack of access despite the *allegation* that defendant's copying of plaintiff's protected work was evidenced by striking similarities between the copyrighted work and infringing work).

**B.      The FAC Does Not Adequately Plead Facts Demonstrating Ownership of a Valid Copyright.**

A copyright infringement claim fails unless the plaintiff owns a valid registered copyright. 17 U.S.C. § 501; *Walker v. DC Comics, Inc.*, 67 F. App'x 736, 737 (3d Cir. 2003). While the FAC attaches a Registration and pleads that Mr. Grondin is the "sole owner" (Dkt. 13 ¶ 12), the Registration itself raises numerous issues rendering that allegation insufficient.

First, the Registration attached to the FAC states that the Work is a "work made for hire," Dkt. 13-2 ¶ 2b, which means that it was prepared by an employee within the scope of his or her employment or a work specially ordered or commissioned for use. 17 U.S.C. § 101. In the case of a work made for hire, the employer or other person or entity for whom the work was prepared is the *owner of all copyrights* in that work unless both parties signed a written agreement to the contrary. 17 U.S.C. § 201(b). The FAC (1) does not acknowledge that the Work was a "work made for hire," (2) does not allege who hired Mr. Grondin to create the work, and (3) does not allege that Mr. Grondin and that unknown person or entity agreed "in a written instrument" that Mr.

---

meaning that they do not impact the physical appearance of the Work. Thus, they can neither show substantial similarity nor striking similarity *to the Work*.

Grondin would own any of the copyrights in the Work. As a result, the FAC (which incorporates

the Registration) does not properly allege that Mr. Grondin is the owner of copyrights in the Work.

*See In re Marvel Ent. Grp., Inc.*, 254 B.R. 817, 832-34 (D. Del. 2000) (finding Marvel to be the

owner of copyrights in characters drawn by artist as works made for hire, where no written

instrument transferred rights to artist).

Second, the Registration states that the Work is a "derivative" work "based on the Stanley

Cup." Dkt. 13-2 ¶ 6a. By statute, the owner of the preexisting work (here, the NHL) owns the

"exclusive rights . . . to prepare derivative works based upon the copyrighted work." 17 U.S.C. §

106. Though the FAC alleges that Mr. Grondin created the Work "with licenses from the NHL,"

it fails to allege that Mr. Grondin was granted the right to create a derivative work based on the

Stanley Cup and that he had permission to seek to register copyrights in it.[16] Absent such a grant

of permission, Mr. Grondin himself may well be an infringer and not entitled to any copyright

protection in the Work. *See Pickett v. Prince*, 207 F.3d 402, 406 (7th Cir. 2000) (affirming

dismissal of plaintiff's claim for copyright infringement when plaintiff's claim was based on a

derivative work he was unauthorized to make based upon the copyrighted work); *see also DC

Comics*, 67 F. App'x at 738 (finding if the underlying work of a derivative work is protected by

copyright, the author will receive no protection at all and "is a copyright infringer, because in order

to create his work he has copied the underlying work" (citation omitted)).

The mere fact that Mr. Grondin registered the Work and attached the Registration to his

FAC cannot suffice where the Registration itself suggests he does not own the underlying

copyrights. The FAC fails to allege sufficient facts under *Twombly* to support Mr. Grondin's bare

---

[16] The FAC asserts that Mr. Grondin "created these works with licenses from the NHL[.]" Dkt. 13 ¶ 9. But, he neither
attaches a copy of any such license agreement, nor states that the license permitted him to seek to register copyrights
in his derivative work.

allegation that he is the owner of the Work, when that allegation is directly contradicted by statements in the Registration.[17] Accordingly, Mr. Grondin's failure to plead facts regarding his ownership of copyright in the Work warrants dismissal.

### III.   Dismissal Should be With Prejudice Because Further Amendment is Futile

Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." The Third Circuit recognizes, however, that "a district court need not grant leave to amend a complaint 'if the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Kundratic v. Thomas*, 407 F. App'x 625, 630 (3d Cir. 2011) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

In the copyright context, dismissal with prejudice is appropriate when the works themselves are not substantially similar as a matter of law. This is because no amount of amending the pleading can change the physical appearance of the works; nor can amending convert unprotectable elements in the plaintiff's work into protectable elements. *See Tanksley*, 902 F.3d at 171, 177 (affirming dismissal of complaint with prejudice, noting that "[s]uch dismissals, which were formerly rare . . . are now more common").

Following the filing of Fanatics' initial Motion to Dismiss, Mr. Grondin amended the Complaint in an apparent effort to correct the numerous flaws identified by Fanatics. As explained above, those amendments did not – and indeed *could* not – make the Fanatics Products substantially similar to the Work. As this Court recently explained in a similar case: "amendment would be futile. Even if [plaintiff] were able to amend his complaint . . . his claims would nevertheless fail because the works are not substantially similar, and no amount of artful pleading

---

[17] The Registration also contains other inconsistencies raising concerns about its validity. For example, it is registered as a 3-D Work (Dkt. 13-2 at 1, ¶ 2a), but describes the work as "two dimensional." Dkt. 13-2 at 2, ¶ 6b. The dates on the Registration also are suspect, as it bears an effective date of May 27, 1998, but indicates the application was not even received until January 2, 1999. Dkt. 13-2 at 1.

will change that fact." *Walker*, 2022 WL 605292, at *11; *see also Kitchen & Bath Concepts of Pittsburgh, LLC v. Eddy Homes, Inc.*, No. 16-589, 2016 WL 7404559, at *7 (W.D. Pa. Dec. 22, 2016) (dismissing amended complaint with prejudice in copyright case after plaintiff had previously exercised right to amend complaint and any further amendment would be futile). As in *Walker*, "no amount of artful pleading will change" the fact that Mr. Grondin's Work and the Fanatics Products are not substantially similar. *Walker*, 2022 WL 605292, at *11. Moreover, Mr. Grondin already took the opportunity to amend his Complaint and could have included additional facts to bolster his conclusory allegations of access and ownership, yet failed to do so. That failure also demonstrates that any further amendments would likewise be futile.

For all of these reasons, this Court should dismiss the FAC with prejudice and deny any further leave to amend.

## IV.    Fanatics Should Be Awarded its Attorneys' Fees As The Prevailing Party

In any civil action brought under the Copyright Act, the Court may "award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. In deciding whether to award fees, the Court may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986) (noting that where "plaintiff had ample opportunity to justify the filing of a lawsuit that patently had no legal merit . . . an award of some counsel fees to defendants would be appropriate"); *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994) (quoting the *Lieb* factors with approval).

As outlined above, Mr. Grondin has no justification for asserting copyright infringement claims against Fanatics, and even a cursory investigation of the facts (including, in particular, a review of the Registration attached to the Complaint and again to the Amended Complaint) and

law would have made this clear to his attorneys. Moreover, having been presented with the arguments and case law in Fanatics' original Motion to Dismiss, Mr. Grondin still did not dismiss his specious claim. Instead, he re-asserted the same unsupportable claims in his Amended Complaint, requiring Fanatics to incur additional fees and expenses revising and renewing the Motion to Dismiss.

Under these circumstances, a fee award is appropriate. *See Marino v. Usher*, No. 11-6811, 2014 WL 12606151, at \*2 (E.D. Pa. Nov. 3, 2014) (granting attorneys' fees because "Plaintiff's claims for copyright infringement were objectively unreasonable, both in fact and law"); *Lowe v. Loud Recs.*, No. CIV.A. 01-1797, 2004 WL 527831, at \*3 (E.D. Pa. Mar. 17, 2004) (granting attorneys' fees where "the factual and legal components of [plaintiff's] copyright infringement claim were objectively unreasonable"); *T.B. Proprietary Corp. v. Sposato Builders, Inc.*, No. CIV. A. 94-6745, 1996 WL 488940, at \*2 (E.D. Pa. Aug. 23, 1996) (granting fee award even though "[t]he action was not wholly frivolous" and some of the copyright claims "although unsuccessful, were not frivolous").

## CONCLUSION

Mr. Grondin's FAC fails to state a claim upon which relief may be granted and should be dismissed for three independent reasons: (1) as a matter of law, the Fanatics Products are not substantially similar to any protectable elements that may exist in the Work; (2) the FAC fails to plead the necessary facts to support the notion that Fanatics had access to the Work prior to designing and selling the Fanatics Products; and (3) the FAC does not adequately plead the facts necessary to support Mr. Grondin's ownership of a valid copyright in the Work. For the foregoing reasons, Fanatics respectfully requests that the Court grant this Motion and dismiss the FAC with prejudice. Fanatics also respectfully requests that the Court award its attorneys' fees pursuant to 17 U.S.C. § 505.

Dated: August 19, 2022                    Respectfully submitted,


                                          */s/ R. Charles Henn Jr.*
                                          **KILPATRICK TOWNSEND & STOCKTON
                                          LLP**
                                          R. Charles Henn Jr. (a*dmitted pro hac vice*)
                                          1100 Peachtree Street, NE, Suite 2800
                                          Atlanta, Georgia 30309
                                          Telephone: (404) 815-6500
                                          Facsimile: (404) 815-6555
                                          Email: chenn@kilpatricktownsend.com

                                          **MORGAN, LEWIS & BOCKIUS, LLP**
                                          Matthew D. Klayman, PA Bar No. 319105
                                          1701 Market Street
                                          Philadelphia, PA 19103-2921
                                          Telephone:     (215) 963-5609
                                          Facsimile:     (215) 963-5001
                                          matthew.klayman@morganlewis.com

                                          *Attorneys for Defendant*

**EXHIBIT 1**
**FANATICS PRODUCT: CRYSTAL PUCK**



**EXHIBIT 2**
**FANATICS PRODUCT: CRYSTAL STANLEY CUP**



**EXHIBIT 3**
**FANATICS PRODUCT: SUBLIMATED PLAQUE**

