Evan L. Frank, Esq. (311994)
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
215-935-1000
215-935-1110 (fax)
efrank@alflaw.net
Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| William Grondin, | : | Civil Action No. 22-cv-01946-GEKP |
| | : | |
| Plaintiff, | : | Jury Trial Demanded |
| | : | |
| v. | : | |
| | : | |
| Fanatics, Inc., | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

### I.      Summary.

The Court should deny the Motion for the following reasons:

A.      In at least two published decisions, the Third Circuit has foreclosed Defendant's

originality analysis at pages 9-14 of Defendant's brief, at least in the context of three-

dimensional works.  *Silvertop Assocs. v. Kangaroo Mfg.*, 931 F.3d 215, 221 (3d Cir. 2019); *Kay*

*Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005).  The defense uses what the

Third Circuit has called the "divide-and-conquer approach", which means that the defense asks

the Court to "inspect each feature individually, find each one too unoriginal or too utilitarian in

isolation for copyright, and decline to protect the whole."  *Silvertop*, 931 F.3d at 221.

As the Third Circuit then explained, "… *Kay Berry* forecloses this divide-and-conquer

approach by training our focus on the combination of design elements in a work.  *Silvertop*, 931

F.3d 215 at 221.  Moreover, "[i]t means **nothing** that these elements may not be individually entitled to protection."  *Kay Berry*, 421 F.3d at 207 (emphasis added).

B.      Defendant does briefly address the work as a whole, but asks the Court to apply the standard used in *Feist v. Rural Tel.* for a factual compilation (in that case, for the scope of copyright protection given to a telephone book).  Def. Br., 15.  This is because the protection for a factual compilation is "thin."  *Feist v. Rural Tel.*, 499 U.S. 340, 349 (1991).  But Plaintiff's work is not a factual compilation – it is a sculpture.  And courts have not necessarily given "thin" copyright protection to sculptures – even to sculptures with simple designs.  In *Silvertop*, the three-dimensional work was a banana, and in *Kay Berry* it was "rocks or stones, inscribed with writings."  *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 202 (3d Cir. 2005).  Likewise, in *Kellman v. Coca-Cola Co.*, 280 F. Supp. 2d 670, 677-78 (E.D. Mich. 2003), a plaintiff's three-dimensional work in the shape of a wing nut was protected – and the court even went so far (at the 12(b)(6) stage) as to find a plausible claim for infringement where the defendant's work was two-dimensional.  In none of these cases involving relatively simple designs did the courts so limit the scope of copyright protection.  In comparison, Plaintiff's creation is more elaborate and original than the designs in those cases.

C.      Defendant also glosses over the fact that Plaintiff and Defendant make memorabilia for the same teams, for the same professional sports league, for the same games.  However, this is essentially the definition of third-party access because "access through a third party may be established by showing that the third party had possession of plaintiff's work and had concurrent dealings with both plaintiff and defendant."  *Cottrill v. Spears*, 2003 U.S. Dist. Lexis 8823, at 17 (E.D. Pa. May 22, 2003).  Here, both Plaintiff and Defendant dealt with the same third parties, the NHL and its constituent hockey teams:  to physically retrieve the ice, to sell the works, and to

obtain licensing.  As Plaintiff obtained licenses from the NHL and often sold his works directly to NHL teams, these third parties possessed copies of Plaintiff's works.  Moreover, and those dealings gave rise to both Plaintiff's works and the infringing works as both Plaintiff and Defendant created NHL products, and both Plaintiff and Defendant obtained permission from the NHL and its teams to retrieve ice following NHL games.  Plaintiff has also pointed to other evidence to suggest copying, including that both party's works commemorate the same annual hockey games and that both provide certificates of authenticity attesting as to which game the ice in the work was taken from.  The manner in which both works are created is the same in a very literal sense since both parties retrieve ice from NHL rinks following games.

D.     Defendant's works in fact have every single element of Plaintiff's works.  Plaintiff's work contains a three-dimensional piece in the shape of a hockey puck.  Defendant's work contains a three-dimensional piece in the shape of a hockey puck.  Plaintiff modifies the hockey-puck shape with a hollow cavity, in which melted rink ice is sealed.  Defendant likewise modifies the hock-puck shape a hollow cavity, in which melted rink ice is sealed.

The only *difference* between the two works, is that the Plaintiff's portrays the Stanley Cup as a flattened sculpture – while Defendant's portray the Stanley Cup as a drawing. However, a change in medium does not preclude a finding of infringement – even when the change is from three-dimensional to two-dimensional or, vice versa, from two-dimensional to three-dimensional.  *Easter Unlimited, Inc. v. Rozier*, 2021 U.S. Dist. Lexis 184636, at 29-30 (E.D.N.Y. Sep. 27, 2021) (so holding and listing cases).  In this case, Defendant has not even changed the medium completely as the hockey-puck piece remains identical.

E.     Plaintiff has alleged that he obtained licenses from the NHL.  However, Defendant argues that Plaintiff must have not merely a license to create the derivative work, but a license

specifically authorizing him to obtain a copyright registration for the derivative work.  Defendant

cites no case in support of this argument, and at least one Court of Appeals has rejected it.

"[T]here is nothing in the Copyright Act requiring the author of a derivative work to obtain

permission to copyright his work from the owner of the copyright in the underlying work."

*Schrock v. Learning Curve Int'l*, 586 F.3d 513, 523 (7th Cir. 2009).

G.      "[A] certificate of registration with the copyright office constitutes 'prima facie evidence

of the validity of the copyright and of the facts stated in the certificate,' including those

pertaining to ownership."  *Beom Su Lee v. Roku Karaoke*, 2019 U.S. Dist. Lexis 102988, at 8

(D.N.J. June 19, 2019).  "It is enough that the complaint alleges 'that plaintiff owns the

copyrights in those works' and 'that the copyrights have been registered in accordance with the

statute.'"  *Hartmann v. Amazon*, 2021 U.S. Dist. Lexis 157035, at 15 (S.D.N.Y. Aug. 19, 2021).

**II.     Facts.**

Plaintiff created "Slice of the Ice" in 1996.  First Am. Compl., ¶ 7.  Plaintiff created these

works with licenses from the National Hockey League (NHL).  Id., ¶ 9.  Slice of the Ice is

comprised of a sculpture in the approximate outline of the Stanley Cup.  Id., ¶ 8.  Embedded in

the Stanley Cup is a hockey-puck shaped piece with a hollow cavity.  Id.  Ice is taken from the

rink of client-requested hockey games (e.g., the Stanley Cup Finals), melted, and sealed inside

the hockey puck.  Id.

In 1998, Plaintiff applied for and received a copyright registration.  Id., ¶ 11.  Plaintiff is

the sole owner of the copyright registration.  Id., ¶ 12.

Plaintiff's First Amended Complaint attaches examples of his work (Ex. A), the

copyright registration (Ex. B), and Defendant's infringing works (Ex. C).

The Stanley Cup is a foreign work created in 1892.  First Am. Compl., ¶ 6.  Both

Plaintiff's and Defendant's works are memorabilia for the same sports league, the NHL.  Id., ¶

19.  Both Plaintiff and Defendant retrieve rink ice following NHL games to deposit in the works.

Id.  Both Plaintiff and Defendant store the melted ice in the same manner – that is, inside a

sealed hockey-puck-shaped cavity.  Id.  Both Plaintiff and Defendant provide consumers with a

certificate of authenticity attesting as to which game the ice was taken from.  Id.  Both Plaintiff's

works and Defendant's works commemorate the same annual hockey games, usually Stanley

Cup games.  Id.

## III.   Argument.

### A.   Standard.

To survive a 12(b) motion to dismiss, the "complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quotations omitted).  A complaint "does not need detailed factual

allegations," but "requires more than labels and conclusions, and a formulaic recitation of the

elements…"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.   Plaintiff's registration within five years of publication constitutes prima facie evidence of ownership and the validity of the copyright.

Plaintiff's certificate of registration constitutes "prima facie evidence of the validity of

plaintiff's copyright" and "Defendant, therefore, has the burden of overcoming this presumption

of validity."  *Williams Elecs. v. Artic Int'l*, 685 F.2d 870, 873 (3d Cir. 1982).  "[A] certificate of

registration with the copyright office constitutes 'prima facie evidence of the validity of

the copyright and of the facts stated in the certificate,' including those pertaining to ownership."

*Beom Su Lee v. Roku Karaoke*, 2019 U.S. Dist. Lexis 102988, at 8 (D.N.J. June 19, 2019); *see

also Beom Su Lee v. Karaoke City*, 2019 U.S. Dist. Lexis 68883, at 9 (S.D.N.Y. Apr. 22, 2019)

("A Certificate of Registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright if it is made before or within five years after first publication of the work.").

Here, Plaintiff created Slice of the Ice in 1996, then applied for and received a copyright registration in 1998. Since Plaintiff received a copyright registration within two years after the work was created, he necessarily obtained the registration within five years after first publication. Plaintiff's registration therefore constitutes prima facie evidence of both the validity of the copyright and of Plaintiff's ownership.

       **C.**      **Plaintiff's work has sufficient originality for copyright protection.**

"To adequately state a claim for copyright infringement, a plaintiff must allege facts setting forth (1) ownership of a valid copyright in a work; and (2) the unauthorized copying of elements of the work that are original. **That is all.**" *Southall v. Force Partners, LLC*, 2021 U.S. Dist. Lexis 164680, at 5 (N.D. Ill. Aug. 31, 2021) (emphasis added) (citing Feist v. Rural Tel., 499 U.S. 340, 361 (1991)). "A claim for copyright infringement involves two essential elements: ownership of copyright, and copying by the defendant." *Beom Su Lee v. Roku Karaoke*, 2019 U.S. Dist. Lexis 102988, at 7-8 (D.N.J. June 19, 2019) (citing *Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 561 (3d Cir. 2002)). "Originality is a very low bar, requiring only a minimal amount of creativity." *Silvertop Assocs. v. Kangaroo Mfg.*, 931 F.3d 215, 219 (3d Cir. 2019). "But as the Court noted earlier in the trial, the law of copyright protects the modest creations of the humble versifier who churns out greeting cards as much as it does the thrilling inventions of a poet laureate." *Weindling Int'l v. Kobi Katz, Inc.*, 2000 U.S. Dist. Lexis 14255, at 10 (S.D.N.Y. Sep. 29, 2000). "To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily,

as they possess some creative spark, no matter how crude, humble or obvious it might be." *Feist Publ'ns v. Rural Tel.*, 499 U.S. 340, 345, 111 S. Ct. 1282, 1287 (1991) (quotations omitted). Originality requires "independent creation plus a modicum of creativity". *Id.* at 346.

"[I]t means nothing that these elements may not be individually entitled to protection." *Silvertop Assocs. v. Kangaroo Mfg.*, 931 F.3d 215, 220 (3d Cir. 2019) (quoting *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005)).  As the Third Circuit explained, precedent "forecloses this divide-and-conquer approach by training our focus on the combination of design elements in a work." *Silvertop*, 931 F.3d at 221 (3d Cir. 2019).  Rather, the Court must analyze "a specific *combination* of elements that gives a sculpture its unique look could be eligible for copyright protection." *Id.* at 220 (quotations omitted).  "When an author combines these [non-protectable] elements and adds his or her own imaginative spark, creation occurs, and the author is entitled to protection for the result." *Kay Berry*, 421 F.3d at 207.

Although the analysis focuses on the combination of elements as a whole, Plaintiff's work does include two original elements.  The hockey-shaped piece, modified to display melted rink ice as memorabilia, is itself original.  The use of water (the melted rink ice) on the inside, in a way that is visible to an observer, is itself a modification from the initial form of a hockey puck.  Even the remaining portion of the hockey-puck piece (that is, excluding the water) is itself different from a hockey puck as a hockey puck is solid, not hollow.  Others may be free to use the *idea* of retrieving ice from hockey games, melting it, and displaying it as memorabilia.  But they are not free to copy Plaintiff's expression of that idea.  Together, the combination of these elements in the hockey-puck piece alone is a protectable expression of the idea of displaying melted rink ice as memorabilia.  Plaintiff's sculpture of the Stanley Cup is itself protectable as it is not a literal reproduction of the Stanley Cup, but rather a flattened sculpture in the

approximate outline of the Stanley Cup.  Even if the Court were to find that any of these
elements alone were unprotectable, the combination of them constitutes an original work.

### D.      Plaintiff has alleged substantial similarity because every element of Plaintiff's work is included in Defendant's works.

Substantial similarity is generally a question of fact for the jury, not a question of law for
the Court.  "Because no easy rule of thumb can be stated as to the quantum of fragmented literal
similarity permitted without crossing the line of substantial similarity, whether works are
substantially similar is a classic jury question."  *Consulnet Computing, Inc. v. Moore*, 2007 U.S.
Dist. Lexis 67659, at 20 (E.D. Pa. Sep. 12, 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287
F.3d 936, 943 (10th Cir. 2002)); *Campbell v. Osmond*, 917 F. Supp. 1574, 1580 (M.D. Fla. 1996)
(same); *Russell v. Walmart Inc.*, 2020 U.S. Dist. Lexis 252882, at 26-27 (C.D. Cal. Oct. 16,
2020) (same).

The standard for substantial similarity is the perspective of a lay observer.  "To the
contrary, a graphic or three dimensional work … is created to be perceived as an entirety. …
Rather … the comparison should attempt to predict the probable reaction of an average lay
observer to the overall aesthetic appeal of the copyrighted work."  *Campbell*, 917 F. Supp. at
1581.

Defendant's works in fact have every single element of Plaintiff's works.  Plaintiff's
work contains a three-dimensional piece in the shape of a hockey puck.  Defendant's work
contains a three-dimensional piece in the shape of a hockey puck.  Plaintiff's hockey puck has a
hollow cavity, as does Defendant's.  Plaintiff's work displays melted rink ice within the cavity,
and Defendant's work displays melted rink ice within the cavity.

The only *difference* between the two works, is that Plaintiff's portrays the Stanley Cup as
a flattened sculpture – while many of Defendant's portray the Stanley Cup as a two-dimensional

drawing on the puck itself or on the box displaying the puck.  However, a change in medium does not preclude a finding of infringement – even when the change is from three-dimensional to two-dimensional or, vice versa, from two-dimensional to three-dimensional.  *Easter Unlimited, Inc. v. Rozier*, 2021 U.S. Dist. Lexis 184636, at 29-30 (E.D.N.Y. Sep. 27, 2021) (so holding and listing cases); *Kellman v. Coca-Cola Co.*, 280 F. Supp. 2d 670, 677-78 (E.D. Mich. 2003) (substantial similarity between copyrighted sculpture and image on a t-shirt).  Moreover, Defendant has not even changed the medium completely as the hockey-puck piece remains identical to Plaintiff's.

   E. **Plaintiff has shown third party access because of both parties' dealings with the NHL and NHL teams concerning the works and collection of rink ice.**

   "There are three legal theories for proving access in copyright cases: (1) direct access; (2) access through third parties; or (3) striking similarity."  *Cottrill v. Spears*, 2003 U.S. Dist. Lexis 8823, at 15-16 (E.D. Pa. May 22, 2003).  "Access through third parties connected to both a plaintiff and a defendant may be sufficient to prove a defendant's access to a plaintiff's work."  *Gaste v. Kaiserman*, 863 F.2d 1061, 1067 (2d Cir. 1988).  "Additionally, access through a third party may be established by showing that the third party had possession of plaintiff's work and had concurrent dealings with both plaintiff and defendant."  *Cottrill*, 2003 U.S. Dist. Lexis 8823, at 17.

   Defendant glosses over the fact that Plaintiff and Defendant make memorabilia for the same teams, for the same professional sports league, for the same games.  However, this is essentially the definition of third-party access because "access through a third party may be established by showing that the third party had possession of plaintiff's work and had concurrent dealings with both plaintiff and defendant."  *Cottrill*, 2003 U.S. Dist. Lexis 8823 at 17.  Here, both Plaintiff and Defendant dealt with the same third parties, the NHL and its constituent

9

hockey teams:  to physically retrieve the ice, to sell the works, and to obtain licensing.  As Plaintiff obtained licenses from the NHL and often sold his works directly to NHL teams, these third parties possessed copies of Plaintiff's works.  Moreover, and those dealings gave rise to both Plaintiff's works and the infringing works as both Plaintiff and Defendant created NHL products, and both Plaintiff and Defendant obtained permission from the NHL and its teams to retrieve ice following NHL games.  Plaintiff has also pointed to other evidence to suggest copying, including that both party's works commemorate the same annual hockey games and that both provide certificates of authenticity attesting as to which game the ice in the work was taken from.  The manner in which both works are created is the same in a very literal sense since both parties retrieve ice from NHL rinks following games.

In this case, Plaintiff and Defendant had concurrent dealings with the same third parties, the NHL and NHL teams.  Moreover, both the protected works and infringing works arise out of the parties' dealings with the NHL.  Both parties sell NHL products.  Both parties obtained licenses from the NHL.  And both parties obtained permission from the NHL and NHL teams to retrieve ice following NHL games.  For these reasons, at the 12(b)(6) stage, Plaintiff has made sufficient allegations that Defendant had access to Plaintiff's work.

**F.    The author only needs permission to create the derivative work, not permission to copyright the derivative work.**

The author of a derivative work owns the copyright in the derivative work by default. "[T]here is nothing in the Copyright Act requiring the author of a derivative work to obtain permission to copyright his work from the owner of the copyright in the underlying work." *Schrock v. Learning Curve Int'l*, 586 F.3d 513, 523 (7th Cir. 2009).  This is because "copyright in a derivative work arises by operation of law -- not through authority from the owner of the copyright in the underlying work."  *Id.* at 515.

> We assume for purposes of this decision that the district court correctly classified Schrock's photographs as derivative works. It does not follow, however, that Schrock needed authorization from Learning Curve to copyright the photos. As long as he was authorized to make the photos (he was), he owned the copyright in the photos to the extent of their incremental original expression.

*Id.*

Here, Defendant argues that Plaintiff must have not only a license to create derivative works, but a license specifically allowing Plaintiff to obtain a copyright registration on the derivative works.  However, Defendant fails to cite any case in support of this argument, and at least one Court of Appeals, the Seventh Circuit, has explicitly rejected it.  *Schrock*, 586 F.3d at 515.

Defendant's argument has another flaw, which is that Defendant relies on a third-party's trademark registrations, not copyrights (Defendant does not cite a copyright registration for the Stanley Cup, and in any event a work created in 1892 would have long since fallen into the public domain).  However, "the term 'derivative work' appears only in the Copyright Act, and not, for example, in the patent or trademark statutes".  *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1079 (9th Cir. 2000).  Thus, "to qualify as a derivative work, the work from which it derives must itself be within the ambit of copyright."  *Id.*  For that reason, "the Supreme Court cautions against mixing the doctrines of trademark and copyright."  *Id.* at 1080, n.11 (citing *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 & n.19 (1984); *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97-98 (1918); *Trade-Mark Cases*, 100 U.S. 82, 93-95 (1879)).

### G.    Plaintiff's copyright registration and allegations of ownership are sufficient at the 12(b)(6) stage.

"[A] certificate of registration with the copyright office constitutes 'prima facie evidence of the validity of the copyright and of the facts stated in the certificate,' including those

pertaining to ownership." *Beom Su Lee v. Roku Karaoke*, 2019 U.S. Dist. Lexis 102988, at 8 (D.N.J. June 19, 2019). "It is enough that the complaint alleges 'that plaintiff owns the copyrights in those works' and 'that the copyrights have been registered in accordance with the statute.'" *Hartmann v. Amazon*, 2021 U.S. Dist. Lexis 157035, at 15 (S.D.N.Y. Aug. 19, 2021).

Here, Plaintiff has alleged that he is the owner of the copyright, and the registration quite literally states that Plaintiff is the owner of the copyright. Id., sec. 4 ("Copyright Claimant(s) … William Grondin"). Since the registration was made within five years after first publication, it constitutes prima facie evidence of valid ownership of the copyright. *Beom Su Lee v. Karaoke City*, 2019 U.S. Dist. Lexis 68883, at 9 (S.D.N.Y. Apr. 22, 2019) ("A Certificate of Registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright if it is made before or within five years after first publication of the work.").

**H.      The Court should deny Defendant's request for attorney's fees.**

Even if the Court grants Defendant's motion, the Court should reject Defendant's argument on attorney's fees. The primary consideration is the objective reasonableness of the losing party's position, although other factors must also be considered. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 199 (2016).

Here, every one of Plaintiff's contentions is supported by case law. In contrast, Defendant repeatedly asks the Court to apply an originality analysis, *see Silvertop Assocs. v. Kangaroo Mfg.*, 931 F.3d 215, 221 (3d Cir. 2019), that the Third Circuit has already rejected. Plaintiff's registration carries a presumption of validity and ownership, which adds to the reasonableness of his claims.

Plaintiff's theory of third-party access is supported by case law, including a case from this District. *Cottrill v. Spears*, 2003 U.S. Dist. Lexis 8823, at 17 (E.D. Pa. May 22, 2003); *Gaste v. Kaiserman*, 863 F.2d 1061, 1067 (2d Cir. 1988).

Every single element of Plaintiff's works exists in Defendant's works. The only difference, is that Defendant uses a drawing of the Stanley Cup while Plaintiff uses a flattened sculpture, but a change in medium does not preclude a finding of infringement, even when the change is from 2-D to 3-D or vice versa. *Easter Unlimited, Inc. v. Rozier*, 2021 U.S. Dist. Lexis 184636, at 29-30 (E.D.N.Y. Sep. 27, 2021).

For these reasons, Defendant's Motion must be denied.

## IV.    Conclusion.

For these reasons, Defendant's Motion to Dismiss must be denied.

Respectfully submitted,

/s/ Evan L. Frank
Evan L. Frank, Esq. (311994)
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
215-935-1000
215-935-1110 (fax)
efrank@alflaw.net
Counsel for Plaintiff

September 9, 2022

13