IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM GRONDIN, *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| FANATICS, INC., *Defendant* | : : : | No. 22-1946 |

### MEMORANDUM

PRATTER, J.                                                                                    JANUARY 10, 2023

      William Grondin sued Fanatics, Inc., alleging that he owns a copyright for "Slice of the Ice," a Stanley Cup–shaped piece of hockey memorabilia incorporating melted ice gathered from championship hockey matches, and that Fanatics infringed upon this copyright by creating and selling its own ice-filled hockey puck–shaped memorabilia. But Mr. Grondin cannot copyright the idea of storing game rink ice in a piece of memorabilia, only his particular expression of that idea, and the only nonutilitarian element of his expression shared by Fanatics' work—the hockey puck shape—is so commonplace in the world of hockey memorabilia that it alone cannot establish the necessary similarity between the two works. For the following reasons, the Court therefore grants Fanatics' motion to dismiss.

### BACKGROUND

      Mr. Grondin makes and sells collectible hockey memorabilia. In 1998, he applied for and secured a copyright registration for "Slice of the Ice," a piece of memorabilia comprised of a Lucite sculpture in the approximate shape of the Stanley Cup, with a hockey puck–shaped piece in the center filled with melted ice gathered from the rink used in a prominent hockey game. He alleges that Fanatics has infringed upon his copyright by making and selling a line of competing

1

memorabilia taking the form of crystal hockey pucks, also filled with game rink ice.[1] Fanatics filed the motion to dismiss as to which the Court has heard oral argument.

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In evaluating the sufficiency of a complaint, the Court may consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). But the Court need not accept a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

## DISCUSSION

To state a claim for copyright infringement, Mr. Grondin must allege (1) ownership of a valid copyright and (2) that Fanatics engaged in unauthorized copying of the original, protectable elements of his work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 360, 361 (1991); *see*

---

[1] Mr. Grondin's First Amended Complaint lists several allegedly infringing works produced by Fanatics, including a line of crystal hockey pucks, a three-dimensional figurine in the shape of the Stanley Cup filled with game rink ice, and a snow globe filled with game rink ice. At oral argument and in his supplemental briefing, however, Mr. Grondin clarified that he only alleges infringement based on Fanatics' crystal hockey pucks.

2

*also Tanksley v. Daniels*, 902 F.3d 165, 172–73 (3d Cir. 2018). The second element includes two components: (1) actual copying and (2) material appropriation. *Tanksley*, 902 F.3d at 173. To properly allege actual copying, Mr. Grondin must allege either direct copying or facts from which copying may be inferred based on Fanatics having access to his work and substantial similarity between Fanatics' work and his own. *Id.* at 173–74.

In its motion to dismiss, Fanatics does not dispute the originality of "Slice of the Ice." Rather, it challenges Mr. Grondin's ownership of a valid copyright and his allegations of substantial similarity and access. For the reasons that follow, the Court finds that Mr. Grondin has adequately alleged ownership of a valid copyright but agrees with Fanatics that the complaint fails to properly allege substantial similarity of Fanatics' work with Mr. Grondin's or that Fanatics has such access to protected copies of the item without access provided by Mr. Grondin directly and knowingly.

## I. Ownership of a Valid Copyright

Ownership of a valid copyright is a prerequisite to an infringement claim. 17 U.S.C. § 501(b). Mr. Grondin's amended complaint includes as an exhibit a 1998 certificate of registration for "Slice of the Ice." Such a registration is *prima facie* evidence of the validity of the copyright and of the facts stated therein. *See Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 440 (D. Del. 2005). Fanatics argues, however, that the facts stated in Mr. Grondin's registration themselves call into question the validity of his copyright for two reasons.

First, Fanatics points out that Mr. Grondin's registration identifies "Slice of the Ice" as a "Work Made for Hire." Where a work is made for hire, the copyright holder is the employer or commissioner of the work. 17 U.S.C. § 201(b); *In re Marvel Ent. Grp., Inc.*, 254 B.R. 817, 833–34 (D. Del. 2000). The amended complaint alleges that Mr. Grondin is the copyright holder but

3

does not allege any agreement transferring ownership of the copyright to Mr. Grondin.[2] At the motion to dismiss stage, the Court resolves this discrepancy in Mr. Grondin's favor. *Cf. Hartmann v. Amazon.com, Inc.*, No. 20 Civ. 4928, 2021 WL 3683510 at *5 (S.D.N.Y. Aug. 19, 2021) (denying a motion to dismiss where the plaintiff alleged ownership of a copyright despite the cited registration numbers not being those of the underlying works).

Second, Fanatics notes that the registration identifies "Slice of the Ice" as a derivative work based on the Stanley Cup[3] and that Mr. Grondin has not alleged that he obtained permission from the NHL to register a copyright on the derivative work. In response, Mr. Grondin argues that he does not need permission from the NHL to seek a copyright for a derivative work, only permission to create the derivative work itself, citing the Seventh Circuit Court of Appeals' holding in *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 515 (7th Cir. 2009). Fanatics cites no contrary authority, only caselaw stating that Mr. Grondin would not be entitled to copyright protection for an unauthorized derivative work. Here, the amended complaint alleges that Mr. Grondin created "Slice of the Ice" under license from the NHL. Thus, Mr. Grondin has adequately pled ownership of a valid copyright in an authorized derivative work.

## II. Copying

To state a claim for copyright infringement, Mr. Grondin must allege that Fanatics copied the original, protectable elements of his work. Copying, in turn, "itself comprises two (frequently conflated) components: actual copying and material appropriation of the copyrighted work."

---

[2] At oral argument, Mr. Grondin represented that the "Work Made for Hire" designation on the registration was an error.

[3] Fanatics also suggests that Mr. Grondin may not obtain a valid copyright based on a derivative work where the original work—the Stanley Cup—is a trademark, rather than a copyright. But it does not matter that the Stanley Cup happens to be a registered trademark; what matters is whether the Cup is "within the ambit of copyright." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1079 (9th Cir. 2000). Whether there is, or has ever been, a copyright on the Stanley Cup, the Cup is a sculpture that is copyrightable subject matter. Therefore "Slice of the Ice" may be a valid derivative thereof under the Copyright Act.

4

*Tanksley*, 902 F.3d at 173 (citing *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)). The actual copying inquiry focuses on probative similarity and asks whether a defendant used the plaintiff's work to create its own. *Id.* Because Mr. Grondin does not allege direct copying, the Court must assess whether Fanatics' work and "Slice of the Ice" share similarities from which copying can be inferred. In doing so, the Court may consider all elements of the two works, including those that would not be entitled to copyright protection. *Tanksley*, 902 F.3d at 173 (citing *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 139–40 (2d Cir. 1992)). The material appropriation inquiry, in contrast, focuses on substantial similarity and asks whether "a 'lay-observer' would believe that the copying was of protectible aspects of the copyrighted work." *Tanksley*, 902 F.3d at 174 (quoting *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 562 (3d. Cir. 2002)). To determine substantial similarity, the Court must exclude any unprotectable elements from the two works and then conduct a side-by-side comparison.[4] *Tanksley*, 902 F.3d at 174. Because "[a]ctual copying alone is insufficient to support an infringement claim" absent material appropriation, the Court will begin by examining substantial similarity. *Id.*

---

[4] Fanatics contends that no individual element of "Slice of the Ice" is entitled to copyright protection, and thus that it would be entitled only to "thin" copyright protection, requiring a finding of "near identity" to establish copying. Def.'s Suppl. Br. at 4–5, Doc. No. 23 (citing *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 209 (3d Cir. 2005)). In support of this higher standard, Fanatics cites the Supreme Court's decision in *Feist*, which held that the combination of factual information in a phonebook was entitled to only "thin" protection. But *Feist* was limited to the context of "factual compilations," where the underlying facts themselves cannot be protected. *See Feist*, 499 U.S. at 349. As the Third Circuit Court of Appeals has explained, when the work under consideration is not a factual compilation, the combination of elements remains entitled to the ordinary level of copyright protection. *See, e.g., Silvertop Assocs. Inc.*, 931 F.3d 215, 220 (3d Cir. 2019) (explaining in the context of a banana costume that it "means nothing that these elements may not be individually entitled to protection") (quoting *Kay Berry*, 421 F.3d at 207). The Court therefore applies the ordinary test for substantial similarity.

5

### a. Material Appropriation and Substantial Similarity

Not surprisingly, substantial similarity "is usually an extremely close question of fact" best reserved for a jury, but a court may nonetheless grant a motion to dismiss where there can be no substantial similarity between two works as a matter of law. *Id.* at 171 (quoting *Twentieth Century–Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 n.6 (9th Cir. 1983)). This may be so where the allegedly similar elements are either (1) not protectable under copyright law because they are merely ideas or utilitarian features or (2) cannot give rise to an inference of copying because they are so common or inherent to the underlying ideas being expressed. During oral argument, Mr. Grondin clarified that the sole element from "Slice of the Ice" allegedly copied by Fanatics is the hockey puck–shaped piece with a hollow cavity into which melted rink ice is placed. Therefore the Court considers whether this element is protectable and, if so, whether it is distinct enough from the underlying ideas to give rise to an inference of copying.[5]

Copyright does not protect ideas, only expressions of ideas. Thus, while the idea of storing game rink ice in a piece of memorabilia is not protectable, Mr. Grondin's specific expression of that idea—doing so within a hollow hockey puck–shaped piece—may be. *See Arthur v. Am. Broad. Cos.*, 633 F. Supp. 146, 148 (S.D.N.Y. 1985) (holding that the idea of superimposing the lowercase letters a, b, and c onto the Olympic rings is not copyrightable, but a "particular sculptural execution of this idea" in the form of a brass sculpture is copyrightable).

---

[5] Fanatics protests that the Court must compare the two works as a whole—that is, compare Fanatics' crystal hockey puck to Mr. Grondin's entire "Slice of the Ice" sculpture, rather than its hockey puck–shaped element—to assess substantial similarity. The cases on which Fanatics relies, however, stress the importance of considering a work as a whole in order to "not . . . lose sight of material similarities by balkanizing a unified copyrighted work into constituent elements, which are then compared in isolation." *Tanksley*, 902 F.3d at 175 (internal quotation marks omitted). Here, in contrast, a focus on the hockey puck element does not risk the Court missing the forest for the trees. In any event, because the Court ultimately concludes that the hockey puck element cannot establish substantial similarity, it follows that the rest of "Slice of the Ice," fails to meet this standard when considered as a whole.

But even if Mr. Grondin's decision to express the idea of storing game rink ice in memorabilia using a hockey puck is protectable, he cannot establish substantial similarity simply because Fanatics has also expressed this idea using a hockey puck. Rather, he must show that the similarities between the two works are such that "an ordinary observer would perceive that [Fanatics] has copied protected elements of [his] work." *Tanksley*, 902 F.3d at 175. Not all similarities between two expressions of the same idea can give rise to this inference. Some shared features, for example, are so closely intertwined with the underlying ideas that they will be inevitable in any expression thereof. *See, e.g., Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64, 65 (2d Cir. 1974) ("Since all turtles are created more or less along the same lines, appellant cannot, by obtaining a copyright upon one design of a turtle pin, exclude all others from manufacturing gold turtle pins on the ground that they are substantially similar in appearance."). Copyright protection only extends to unique features that go beyond what is inherent in the underlying idea. *See Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 671–72 (3d Cir. 1990) (explaining that substantial similarity between different animal nose masks could not be established based on elements whose similarity derived "merely from the commonality of the animal subjects both represent"). Fanatics suggests that the use of a hockey puck to express the idea of storing game rink ice in memorabilia is similarly inevitable. But the fact that Fanatics itself makes use of other forms, such as the Stanley Cup and a snow globe, to express this same idea demonstrates that the use of a hockey puck is not inevitable and will not necessarily be present in every expression of this idea.

This does not end the inquiry, however. Even if not quite inevitable, some shared features will be too commonplace within a particular genre, medium, or subject matter to give rise to an inference of material appropriation. When comparing shared features of dramatic works, for

7

example, "*scènes à faire,* or plot elements that flow predictably from a general idea," are excluded because they are "not valid determinants of substantial similarity."[6] *Tanksley,* 902 F.3d at 175. The same principle applies to sculptural works. *See, e.g., Aaron Basha Corp. v. Felix B. Vollman, Inc.,* 88 F. Supp. 2d 226, 230 (S.D.N.Y. 2000) (excluding "the idea of using precious metals, gemstones, and enamel to decorate a pendant" from the substantial similarity analysis because "these decorative feature are commonly used throughout the jewelry business").

Hockey pucks—their shape and dimensions—are "inseparable from, indispensable, or even standard treatment of" the sport of hockey. *Data E. USA, Inc. v. Epyx, Inc.,* 862 F.2d 204, 209 (9th Cir. 1988). Using a hockey puck thus "flow[s] predictably" from the general idea of making a piece of hockey memorabilia. *Tanksley,* 902 F.3d at 175. To allow Mr. Grondin to establish substantial similarity merely on the shared use of such a common element would risk allowing him to "effectively monopolize [the] underlying idea" of hockey memorabilia. *Silvertop,* 931 F.3d at 222. The mere fact that both Mr. Grondin and Fanatics use hockey puck-shaped elements in their works cannot give rise to an inference of material appropriation, and the Court

---

[6] Courts disagree as to whether the *scènes à faire* doctrine is a matter of copyrightability or infringement. The Second and Ninth Circuit Courts of Appeals treat *scènes à faire* as an affirmative defense to infringement, meaning the burden is on the defendant to prove that a *scènes à faire* element should be excluded from the substantial similarity analysis. *See Satava v. Lowry,* 323 F.3d 805, 810 n.3 (9th Cir. 2003); *Hart v. Dan Chase Taxidermy Supply Co.,* 86 F.3d 320, 322 (2d Cir. 1996). The Fifth, Sixth, and Seventh Circuit Courts of Appeals, in contrast, consider *scènes à faire* as part of the copyrightability analysis, thereby placing the burden on the plaintiff. *See Veeck v. S. Bldg. Code Cong. Int'l, Inc.,* 293 F.3d 791, 801 (5th Cir. 2002); *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 535 (6th Cir. 2004); *Ho v. Taflove,* 648 F.3d 489, 497 (7th Cir. 2011). The Third Circuit's caselaw is more equivocal. *Compare Tanksley,* 902 F.3d at 175 (describing *scènes à faire* as "not valid determinants of substantial similarity" and contrasting them with "unprotectable ideas"), *with Tanikumi v. Walt Disney Co.,* 616 F. App'x 515, 521 (3d Cir. 2015) (explaining that "prototypical settings, plots, and characters" in children's literature and movies were "too indistinct to merit copyright protection"). The Court need not pick a side, however, because for purposes of the substantial similarity inquiry it is immaterial whether a given feature is excluded from the analysis because it is not copyrightable or because it cannot give rise to an inference of material appropriation. As the Third Circuit Court of Appeals explained in *Tanksley,* "the basic inquiry remains whether an ordinary observer would perceive that the defendant has copied protected elements of the plaintiff's work" and the *scènes à faire* doctrine is "merely [a] tool[] to assist the trier of fact in reaching a proper conclusion." 902 F.3d at 175.

8

must exclude this shared feature from its substantial similarity analysis. In other words, a puck is always going to be a puck, an immediately identifiable element in the sport of ice hockey.

But the pucks in "Slice of the Ice" and Fanatics' work share more in common than their shape and size. Both pucks differ from standard NHL hockey pucks in that they are (1) clear and (2) have hollow cavities inside to hold melted ice. These features are neither inevitable nor *scènes à faire*. Fanatics contends, however, that these are merely utilitarian features that are necessary to realize—and thus indistinguishable from—the idea of a water-filled puck. *Cf. Kay Berry*, 421 F.3d at 209.

Utilitarian features of a work are not copyrightable. 17 U.S.C. § 101. In *Silvertop Associates Inc. v. Kangaroo Manufacturing Inc.*, for example, the Third Circuit explained that face and arm cutouts in a banana costume were not entitled to protection because they were utilitarian features necessary to realize the idea of a wearable costume. 931 F.3d at 220–21; *see also Star Athletica L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1012–13 (2017) (holding that the utilitarian "shape, cut, and dimensions" of a cheerleader uniform were not copyrightable but the "two-dimensional work of art fixed in the tangible medium of the uniform fabric" was). Here, similarly, making a hockey puck clear and hollow are necessary to realize the idea of a puck containing visible melted ice. They are thus utilitarian features not entitled to protection.

In sum, the Court excludes from its "substantial similarity" analysis the idea of placing game rink ice into a piece of hockey memorabilia, the decision to do so using the commonplace element of a hockey puck, and the utilitarian features of the hockey puck necessary to render the melted ice visible. Because the amended complaint does not identify any other features shared by "Slice of the Ice" and Fanatics' work, it cannot state a claim for infringement. The Court therefore grants Fanatics' motion to dismiss on this ground. The Court does so without prejudice because

it cannot be said at this juncture that amendment would be futile or that Mr. Grondin could not possibly allege other aesthetic or non-utilitarian features from which substantial similarity might be established.

### b. Actual Copying and Access

The final issue is whether Mr. Grondin has adequately pled that Fanatics had access to "Slice of the Ice," which is necessary to establish actual copying." A plaintiff may do so by (1) alleging direct access; (2) alleging such "striking similarity" between the two works as to permit an inference of access; or (3) alleging access through a third party who had possession of the plaintiff's work and concurrent dealing with the plaintiff and the defendant. *See Hofmann v. Pressman Toy Corp.*, 790 F. Supp. 498, 505 (D.N.J. 1990), *aff'd*, 947 F.2d 935 (3d Cir. 1991); *Cottrill v. Spears*, No. CIV.A. 02-3646, 2003 WL 21223846, at *5 (E.D. Pa. May 22, 2003).

The amended complaint alleges that Fanatics had access to "Slice of the Ice" due to its "widespread dissemination . . . in the United States over decades," but lacks any nonconclusory allegations as to the scope of this dissemination or how Fanatics may have come into possession of his work and so fails to plead direct access. *See Walker v. Kemp*, 587 F. Supp. 3d 232, 240–41 (E.D. Pa. 2022). And because the two works do not satisfy the lower standard of substantial similarity, as discussed above, they cannot as a matter of law satisfy the higher standard of "striking similarity" necessary to infer access. *Id.* at 241–42; *Hofmann*, 790 F. Supp. at 508. Finally, while the amended complaint alleges that Mr. Grondin sold "Slice of the Ice" trophies directly to the NHL, it does not allege that the NHL had any concurrent dealings with both Mr. Grondin and Fanatics. Because the amended complaint fails to plead access, the Court grants Fanatics' motion to dismiss on this ground, but again without prejudice, given that it cannot be said that Mr. Grondin could not plausibly amend his complaint to plead access.

10

## CONCLUSION

For the foregoing reasons, the Court grants Fanatics' motion and dismisses Mr. Grondin's amended complaint without prejudice. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE
