IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM GRONDIN, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FANATICS, INC., | : | No. 22-1946 |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                                                           APRIL 14, 2023

William Grondin sued Fanatics, Inc., alleging that Fanatics infringed upon his copyright for "Slice of the Ice," which consists in relevant part of a hollow hockey puck-shaped cavity partially filled with melted ice gathered from the rinks of notable hockey matches. The Court granted Fanatics' first Motion to Dismiss without prejudice, giving Mr. Grondin an opportunity to file a second amended complaint to cure the two defects of his original complaint—namely, the failure to identify a non-utilitarian, non-commonplace feature of the puck-shaped cavity and the failure to adequately allege that Fanatics had access to "Slice of the Ice" via a third party. For the reasons that follow, the Court concludes that Mr. Grondin's Second Amended Complaint again fails to identify a non-utilitarian feature of his work and thus grants Fanatics' Motion to Dismiss.

### BACKGROUND

Writing for the benefit of the parties, the Court assumes their basic familiarity with the facts of this case.[1] At issue in this second Motion to Dismiss are Mr. Grondin's new factual allegations, which the Court accepts as true.

First, Mr. Grondin alleges that both the "Slice of the Ice" puck-shaped cavity and that found in Fanatics' allegedly infringing work contain the same amount of water, "such that shifting the

---

[1] *See Grondin v. Fanatics, Inc.*, No. 22-cv-1946, 2023 WL 144284 (E.D. Pa. Jan. 10, 2023).

1

position of the puck yields the same wave motion of the water" inside. Second Am. Compl. at ¶ 22.

Second, Mr. Grondin alleges that, "[s]ince at least 2005," Fanatics or its predecessors were "participating in the same market" for hockey memorabilia as Mr. Grondin and that Fanatics "ran" the NHL's e-commerce website for over a decade during which "Slice of the Ice" was sold on the NHL's website. *Id.* at ¶ 20.

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). But the Court need not accept a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

## DISCUSSION

To state a claim for copyright infringement, Mr. Grondin must allege (1) ownership of a valid copyright and (2) that Fanatics engaged in unauthorized copying of the original, protectable elements of his work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see also Tanksley v. Daniels*, 902 F.3d 165, 172–73 (3d Cir. 2018). The second element includes two components: (1) actual copying and (2) material appropriation. *Tanksley*, 902 F.3d at 173. To properly allege actual copying, Mr. Grondin must allege either direct copying or facts from which

copying may be inferred based on Fanatics having access to his work. *Id.* at 173. To properly allege material appropriation, Mr. Grondin must allege that his work and Fanatics' are substantially similar based on shared features that are original and protectable. *Id.* at 174.

As the Court noted in its prior decision, Mr. Grondin's complaint adequately alleges ownership of a valid copyright. *Grondin v. Fanatics, Inc.*, No. 22-cv-1946, 2023 WL 144284, at *2 (E.D. Pa. Jan. 10, 2023). As before, though, Fanatics challenges both the substantial similarity and access requirements.

### I. Substantial Similarity

To state a claim for copyright infringement, Mr. Grondin must allege that Fanatics materially appropriated the original, protectable elements of his work. This inquiry focuses on whether the works in question share substantial similarity and asks whether "a 'lay-observer' would believe that the copying was of protectable aspects of the copyrighted work." *Tanksley*, 902 F.3d at 174 (quoting *Dam Things from Den. v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 562 (3d. Cir. 2002)). The Court assesses substantial similarity by excluding any unprotectable elements from the two works and then conducting a side-by-side comparison. *Id.*

Though substantial similarity is usually a question of fact, a court may nonetheless grant a motion to dismiss where there can be no substantial similarity between two works as a matter of law, such as where the allegedly similar elements are either (1) not protectable under copyright law because they are merely utilitarian, or (2) so commonplace or inherent to the idea being expressed that they cannot give rise to an inference of copying. *Grondin*, 2023 WL 144284, at *3.

As the Court explained in its prior decision, because hockey pucks are a commonplace, indeed iconic, aspect of the sport of hockey, the use of a hockey puck shape "'flow[s] predictably'

3

from the general idea of making a piece of hockey memorabilia" and therefore cannot give rise to an inference of material appropriation. *Id.* at *5 (quoting *Tanksley*, 902 F.3d at 175).

The Court also explained that two features of the "Slice of the Ice" puck—its transparency and hollowness—are neither commonplace in the world of hockey nor inevitable from the general idea of hockey memorabilia. *Grondin*, 2023 WL 144284, at *5. These features, however, are unprotectable because they are utilitarian features that are "necessary to realize the idea of a puck containing visible melted ice." *Id.*

Fanatics contends that the only new feature of Mr. Grondin's puck alleged in the Second Amended Complaint—the amount of water it contains—is similarly an unprotectable utilitarian feature. Fanatics asserts that, just as it is necessary to make the puck clear and hollow to make the melted ice visible, it is also necessary to leave some air in the puck to convey that there is water inside. In response, Mr. Grondin protests that the amount of water inside the puck is not utilitarian because it is possible to convey that a puck is filled with water without leaving some air inside because water refracts and absorbs light.

The parties' disagreement hinges on whether having an air bubble inside a puck is necessary to realize the idea of a hockey puck filled with water, or whether this idea could be conveyed by some other means—i.e., a completely filled puck or a puck containing a greater or lesser amount of water. But whether a particular feature of a work is utilitarian depends on whether it is *useful*, not whether it is indispensable. In *Silvertop Associates Inc. v. Kangaroo Manufacturing Inc.*, the Third Circuit Court of Appeals held that holes cut out of a banana costume for the wearer's arms, legs, and face were utilitarian because they contributed to the wearability of the costume rather than its aesthetic features. *See* 931 F.3d 215, 221 (3d Cir. 2019). The district court below came to a similar conclusion, but went on to hold that the *location* of the holes was

4

non-utilitarian because these features "dictate[d] how the costume drapes on and protrudes from a wearer (as opposed to the mere existence of the cutout holes)." *Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.*, 319 F. Supp. 3d 754, 765 (D.N.J. 2018). The Third Circuit expressly rejected this position, however, explaining that it was necessary to "imagine the banana apart from the useful (*i.e.*, wearable) article," and determine if there was "any artistic aspect to the holes' dimensions or locations except in relation to the wearer." *Silvertop*, 931 F.3d at 221 n.5. In other words, it was irrelevant that the holes' utilitarian aims could have been achieved by different means, or even that these different means might produce different aesthetic consequences for the wearer. What mattered was only that the holes served the utilitarian purpose of wearability and the fact that any aesthetic differences bore only on that same wearability purpose.

So, too, here. Placing an air bubble in a water-filled hocky puck serves the utilitarian feature of making the water inside visible. That same utilitarian purpose might be achieved using larger or smaller air bubbles, and these different proportions of water and air might produce different aesthetic consequences, such as the wave pattern created when a puck is shifted. But those aesthetic differences, like the different holes in a banana costume, have no artistic aspect except in relation to conveying that there is water inside the puck. It is also irrelevant that the puck's utilitarian purpose might be achieved through a means other than an air bubble, such as a completely-filled puck that refracts and absorbs light. The face hole in *Silvertop* was utilitarian because it was useful to make the suit wearable, not because it was the *only* way to achieve that goal.[2] The Court thus concludes that the air bubbles in the works at issue are utilitarian features

---

[2] Indeed, as any fan of professional sports mascots can attest to, there are many ways to make a wearable costume without cutting out a hole for the wearer's face, such as by using eye holes or a mesh layer through which a wearer can see out without their own face being visible.

5

not entitled to copyright protection. Mr. Grondin's Second Amended Complaint therefore does not allege any protectable features that could support a finding of substantial similarity.

Mr. Grondin emphasizes that the Second Amended Complaint does not merely allege that the works at issue both have *an* air bubble, but that each have the *same amount* of air left inside, giving the air bubbles a similar appearance and producing a similar wave motion when shifting the puck.

This distinction, however, does not alter the Court's analysis for two reasons. First, because the Court finds that the air bubble is utilitarian and therefore unprotectable, it is irrelevant how similar the bubbles in the two works are. Second, even if the Court agreed with Mr. Grondin that the air bubble is not utilitarian, he cannot establish material appropriation merely by showing that the two works share a given feature. Any similarity must also be *material*, that is, it must be more than *de minimus* so as not to "'fall below the quantitative threshold of substantial similarity.'" *Clarity Software, LLC v. Allianz Life Ins. Co. of N. Am.*, No. 04-cv-1441, 2006 WL 2346292, at *10 (W.D. Pa. Aug. 11, 2006) (quoting *Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997)).

In assessing the materiality of the air bubble, the Court considers two distinct questions. First, the Court engages in a side-by-side comparison of the two works and considers whether a reasonable jury could find that the works are substantially similar,[3] that is, "whether an ordinary observer would perceive that the defendant has copied protected elements of the plaintiff's work." *Tanksley*, 902 F.3d at 175. The Court may properly make this determination at the motion to

---

[3] By "substantially similar," the Court refers to the standard for substantial similarity as it applies to material appropriation – that is, whether "the degree of similarity suffices to demonstrate actionable infringement." *Ringgold*, 126 F.3d at 74 (citing Nimmer on Copyright § 13.01[B] (1997)). This is in contrast to the standard for substantial similarity as it applies to actual copying, where the inquiry is whether the similarity between two works is sufficient to give rise to an inference of copying. *See Tanksley*, 902 F.3d at 173.

6

dismiss stage where, as here, "'what is required is only a visual comparison of the works.'" *Id.* at 172 (quoting *Peter F. Gaito Architecture, LLC v. Simon Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010)). Second, the Court considers the "qualitative value of the copied material, both to the originator and to the plagiarist." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 565 (1985).

As to the first question, the Court does not consider in isolation whether the air bubble in Fanatics' work is substantially similar to that found in "Slice of the Ice." "Such a scattershot approach cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works *as a whole* substantially similar to one another." *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996) (emphasis added). Instead, the Court considers whether a reasonable jury could conclude, based on the similarity between the two air bubbles, that the works as a whole are substantially similar. The Court is convinced that no reasonable jury could do so. Given the relatively small size of a hockey puck and the fact that some minimum amount of water is necessary for visibility, there is only a narrow range of air bubble sizes that are possible. And it is unlikely that a lay observer would be able to detect that two pucks have the same amount of air inside or that they produce the same wave effect when shifted, let alone conclude that unlawful appropriation had taken place in the context of the works as a whole.

On the second question, the Court is unconvinced as to the qualitative value of the air bubble to "Slice of the Ice." Neither the volume of the air bubble nor the wave pattern it produces are detailed in the registration of Mr. Grondin's work. Nor did Mr. Grondin mention this feature in either his original or first amended complaints. Finally, there is nothing in the factual allegations

of the Second Amendment Complaint from which the court could infer that the air bubble lends *any* particular qualitative value to Mr. Grondin's work.

In sum, the Court concludes that the Second Amended Complaint fails to allege any features which could serve as the basis for Mr. Grondin's claim for infringement and grants Fanatics' motion to dismiss on this ground.

## II. Access

Mr. Grondin must plausibly allege that Fanatics had access to "Slice of the Ice." In its previous decision, the Court rejected two theories of access in the First Amended Complaint that are also alleged in the Second Amended Complaint.[4] The Court also explained that, though the First Amended Complaint alleged that both Mr. Grondin and Fanatics had dealings with the NHL, it "[did] not allege that the NHL had any *concurrent* dealings" with the two. *Grondin*, 2023 WL 144284, at *5 (emphasis added).

The Second Amended Complaint supplements these pleadings by alleging that "[s]ince at least 2005" Fanatics participated in the market for hockey memorabilia and that it "ran" the NHL's e-commerce website during a period in which "Slice of the Ice" was sold on the NHL's website. Second Am. Compl. ¶ 20.

Fanatics points out, however, that the Second Amended Complaint only alleges infringement of the "Slice of the Ice" sculpture that was registered in 1998, rather than any derivative works that may have been sold on the NHL's website after 2005. Fanatics argues that

---

[4] First, because the works are not substantially similar, "they cannot as a matter of law satisfy the higher standard of 'striking similarity' necessary to infer access." *Grondin*, 2023 WL 144284, at *5 (citing *Walker v. Kemp*, 587 F. Supp.3d 232, 241–42 (E.D. Pa. 2022)). Second, because the complaint does not allege facts as to how Fanatics "may have come into possession" of "Slice of the Ice," the complaint's allegations of widespread dissemination are insufficient. *Id.*

Mr. Grondin must allege that it had access to the specific work identified in the Complaint, and that access to derivative works is insufficient.

The Court disagrees. The requirement that a plaintiff plead access cannot be viewed in isolation; rather, access must be understood as part of the requirement that a plaintiff allege actual copying of the original, protectable elements of a copyrighted work. *See Tanksley*, 902 F.3d at 173–74. And it is quite possible to copy the original, protectable elements of a work by copying a derivative thereof. *See Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147, 165 (E.D.N.Y. 2002), *aff'd*, 354 F.3d 112 (2d Cir. 2003) ("There is a transitive property to actual copying: if work A is an actual copy of work B, and work B is an actual copy of work C, then work A is deemed an actual copy of work C."); 3 Nimmer on Copyright § 8.01[C] ("[I]t is no defense even if the defendant did copy from a third work rather than from the plaintiff if such third work was itself an unauthorized copy of the plaintiff's work."); *De Acosta v. Brown*, 146 F.2d 408, 413 (2d Cir. 1944) ("[W]hen one copies a copy, he copies the original.") (L. Hand, J. concurring).

With this in mind, Mr. Grondin has adequately pled that Fanatics, by virtue of running the NHL's website through which derivative versions of "Slice of the Ice" were sold, had access that would have enabled it to copy the original, protectable elements of Mr. Grondin's work.

### III. Fanatics' Other Arguments

In its Motion to Dismiss, Fanatics raises two additional grounds for dismissal, each of which the Court rejected in its previous decision.

First, Fanatics asserts that because the 1998 Registration states that "Slice of the Ice" is a "work made for hire," Mr. Grondin cannot own a valid copyright in this work unless the person for whom the work was prepared signs a written agreement to the contrary. The Second Amended Complaint does not allege such an agreement, nor does it allege that the 1998 Registration is in

9

error; rather, it merely alleges that Mr. Grondin is the copyright holder. But as the Court explained in its previous decision, the discrepancy between Mr. Grondin's factual allegations and the attached Registration is resolved in Mr. Grondin's favor at the motion to dismiss stage.[5] *Grondin*, 2023 WL 144284, at *2.

Second, Fanatics asserts that, because the Registration identifies "Slice of the Ice" as a derivative work based on the Stanley Cup, Mr. Grondin cannot be entitled to any copyright protections absent permission from the owner of the Stanley Cup, the NHL. As the Court explained in its prior decision, however, Mr. Grondin *does* allege that he created "Slice of the Ice" under license from the NHL.[6] *Grondin*, 2023 WL 144284, at *2; Second Am. Compl. at ¶ 9 (Doc. No. 32). This is sufficient to survive a motion to dismiss. However, these insufficient grounds do not save the Second Amended Complaint from the other challenges.

## IV. Whether to Dismiss with Prejudice

Because the Second Amended Complaint does not identify any protectable elements of Mr. Grondin's work that are shared by Fanatics' work, the Court grants Fanatics' motion to dismiss.

---

[5] Fanatics challenges this portion of the Court's previous decision and its reliance on *Hartmann v. Amazon.com, Inc.*, No. 20-cv-4928, 2021 WL 3683510, at *5 (S.D.N.Y. Aug 19, 2021). In doing so, Fanatics misreads both the Court's prior decision and *Hartmann*. In *Hartmann*, the defendant argued that a plaintiff failed to plausibly allege registration of certain works because their complaint cited the wrong registration numbers. *Id.* at *5. The court in that case, however, explained that it was not necessary for the complaint to do so, and that "it [was] enough that the complaint allege[d] 'that plaintiff owns the copyrights in those works' and 'that the copyrights have been registered in accordance with the statute.'" *Id.* (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992)). Fanatics contends that *Hartmann* is distinguishable from the present case because the *Hartmann* plaintiff supported their assertion of copyright ownership by attaching multiple documents substantiating the chain of title. **Doc. No. 33 at 13 n.5**. Again, though, the *Hartmann* court was clear that "there was no requirement" that the attached exhibits prove copyright ownership. *Hartmann*, 2021 WL 3683510, at *5. Here, too, it suffices at the motion to dismiss stage that the plaintiff allege ownership and registration; whether a plaintiff "will be able to adduce valid evidence of ownership" is a matter reserved for discovery. *Id.*

[6] Rather than articulate a legal theory for why Mr. Grondin's allegations that he created "Slice of the Ice" under license from the NHL are insufficient, Fanatics states its belief that Mr. Grondin's license in fact prohibited him from creating derivative works of the Stanley Cup. **Doc. No. 33 at 13 n.6**. At the motion to dismiss stage, however, the Court must accept as true all of Mr. Grondin's allegations and may not credit the moving party's beliefs or speculation.

The question remains whether to dismiss with prejudice. In general, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). But a court need not grant leave to amend if such amendment would be futile. *See Kitchen & Bath Concepts of Pittsburgh, LLC v. Eddy Homes, Inc.*, No. 16-cv-589, 2016 WL 7404559, at *7 (W.D. Pa. Dec. 22, 2016). Here, Mr. Grondin has had three opportunities to plead facts from which a reasonable jury could find substantial similarity between "Slice of the Ice" and Fanatics' work, including one opportunity with the benefit of the Court's prior decision. Still, he has not identified any protectable element shared by the two works. Therefore, the Court concludes that further amendment would be futile and dismisses Mr. Grondin's Second Amended Complaint with prejudice.

## V.    Appropriateness of Attorney's Fees and Costs

In any civil action under the Copyright Act, the Court may "award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. The decision to do so is committed to the Court's sound discretion, and the Court may consider facts such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d. Cir. 1986).

Fanatics asserts that attorney's fees are warranted here because the Second Amended Complaint's new allegations regarding substantial similarity are objectively unreasonable in light of the Court's previous decision. Specifically, Fanatics contends that it should have been obvious that Mr. Grondin's new allegations with respect to the air bubble in the hockey puck would be rejected for the same reasons that the Court rejected the allegations in the First Amended Complaint with respect to the puck's shape, size, transparency, and hollowness. **Doc. No. 33 at *16.** As the above discussion illustrates, however, the air bubble raises a different set of issues,

on which neither Mr. Grondin nor Fanatics is completely correct. Moreover, Mr. Grondin's new allegations as to access *did* cure the defects of the First Amended Complaint. The operative claims in the Second Amended Complaint are therefore not objectively unreasonable,[7] and the Court declines to exercise its discretion to award attorney's fees.

## CONCLUSION

For the foregoing reasons, the Court grants Fanatics' motion and dismisses Mr. Grondin's Second Amended Complaint with prejudice. An appropriate order follows.

BY THE COURT:

*[signature]*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[7] Fanatics asserts that attorney's fees are warranted, in part, because the Second Amended Complaint alleges that the hockey puck's shape and transparency are not utilitarian features, contrary to the Court's prior decision. **Doc. No. 33 at \*16.** That argument rings somewhat hollow, however, where Fanatics has also insisted on pressing arguments that were addressed in the Court's previous decision, including those related to the validity of Mr. Grondin's copyright.