IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM GRONDIN, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FANATICS, INC., | : | No. 22-1946 |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                                 MAY 24, 2023

William Grondin sued Fanatics, Inc., alleging that Fanatics infringed upon his copyright for "Slice of the Ice," consisting in relevant part of a hollow hockey puck-shaped cavity partially filled with melted ice gathered from the rinks of notable hockey matches. The Court granted Fanatics' first Motion to Dismiss without prejudice, in part because Mr. Grondin had not identified a non-utilitarian, non-commonplace feature of his puck-shaped cavity. Mr. Grondin filed a second amended complaint, alleging that the air bubble inside the puck-shaped cavity was non-utilitarian. The Court disagreed and granted Fanatics' second Motion to Dismiss with prejudice.

Mr. Grondin now moves for reconsideration, arguing that the Court's prior decision committed clear errors of law. Some of these asserted errors, however, are new issues that are not properly raised in a motion for reconsideration. Mr. Grondin's arguments also fail on the merits. Therefore, the Court denies Mr. Grondin's motion for reconsideration.

### LEGAL STANDARD[1]

"[T]he reconsideration of a court's judgment is an extraordinary remedy, and therefore, should be granted sparingly." *Keahey v. Federated Life Ins. Co.*, No. 20-cv-6419, 2021 WL

---

[1] Writing for the benefit of the parties, the Court assumes their basic familiarity with the facts of this case. *See Grondin v. Fanatics, Inc.*, No. 22-cv-1946, 2023 WL 144284 (E.D. Pa. Jan. 10, 2023).

1

5866877, at *1 (E.D. Pa. Dec. 10, 2021) (quoting *United States ex rel. Ryan v. Endo Pharms., Inc.*, 27 F. Supp. 3d 615, 634 (E.D. Pa. 2014)), *aff'd*, No. 21-cv-3287, 2022 WL 17670304 (3d Cir. Dec. 6, 2022). To succeed on a motion for reconsideration, a party "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). Mr. Grondin does not identify any intervening change in law and no new evidence; instead, his motion rests solely on the Court's purported clear error.

The standard for showing clear error is high. A movant "must show more than mere disagreement with the earlier ruling," *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir. 2018), and may not simply "ask the Court to rethink what [it] had already thought through—rightly or wrongly," *United States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 555 (E.D. Pa. 2016). At the same time, "[a] motion for reconsideration may not be used to present a new legal theory for the first time or to raise new arguments that could have been made in support of the original motion." *McNeal v. Maritank Phila. Inc.*, No. 97-cv-890, 1999 WL 80268, at *4 (E.D. Pa. Feb. 3, 1999). Rather, to prevail, a movant must show that the Court, in considering the arguments before it, "committed a clear error of fact or law." *In re Energy Future Holdings Corp.*, 904 F.3d at 311.

"The Third Circuit Court of Appeals has 'never adopted strict or precise definitions for 'clear error of law or fact' and 'manifest injustice' in the context of a motion for reconsideration,' but 'the focus is on the gravity and overtness of the error.'" *Keahey*, 2021 WL 5866877, at *1 (quoting *In re Energy Future Holdings Corp.*, 904 F.3d at 311-12). Put another way, the question is whether the Court's prior decision committed a "'direct, obvious, [or] observable error'" that demonstrated a "'wholesale disregard'" of controlling precedent. *In re Energy Future Holdings Corp.*, 904 F.3d at 312 (quoting *Manifest Injustice*, Black's Law Dictionary (10th ed. 2014) and

*Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015)). Finally, for any such error to warrant reconsideration, it must "reasonably have resulted in a different conclusion." *Keahey*, 2021 WL 5866877, at *1 (quoting *Elgert v. Siemens Indus., Inc.*, No. 17-cv-1985, 2019 WL 3976409, at *5 (E.D. Pa. Aug. 22, 2019)).

### DISCUSSION

### I. Motion for Reconsideration

Mr. Grondin asserts three clear errors as the basis for his motion for reconsideration. First, he contends that the Court erred in holding that the air bubble inside his water-filled hockey puck was utilitarian because the statutory definition of "useful article" excludes functions that "merely [] portray the appearance of the article or . . . convey information." 17 U.S.C. § 101. Second, he asserts that the Court erred in evaluating the "qualitative value" of the air bubble because this factor is only relevant to a fair use defense. Third, he asserts that, though the Court correctly stated the law that the works should be compared as a whole to assess substantial similarity, the Court failed to do so. The Court addresses each argument in turn.

#### A. Whether the Air Bubble is Utilitarian

To state a claim for copyright infringement, a plaintiff must allege that the defendant copied the original, protectible elements of the plaintiff's work. Utilitarian features of a work are not protectible under copyright law, 17 U.S.C. § 101, and must be excluded when conducting a side-by-side comparison to determine whether the two works are substantially similar so as to permit a lay observer to infer that copying occurred, *Tanksley v. Daniels*, 902 F.3d 165, 173-74 (3d Cir. 2018).

In both Fanatics' first and second motions to dismiss, the parties argued as to whether various elements of Mr. Grondin's work were utilitarian. In granting the first motion to dismiss,

3

the Court held that two features of Mr. Grondin's hockey puck, its transparency and its hollowness, were both utilitarian because they were "necessary to realize the idea of a puck containing visible melted ice." *Grondin v. Fanatics, Inc.*, No. 22-cv-1946, 2023 WL 144284, at *5 (E.D. Pa. Jan. 10, 2023) [hereafter "*Grondin I*"]; *cf. Silvertop Assocs. Inc. v. Kangaroo Mfr. Inc.*, 931 F.3d 215, 221 n.5 (3d Cir. 2019) (holding that face and arm holes in a banana costume were utilitarian because they were "intrinsically useful (perhaps even necessary) to make the costume wearable"). Then, in the second motion to dismiss, the Court held that the air bubble inside Mr. Grondin's puck was also utilitarian because it served the same function as the puck's transparency and hollowness—to make the water inside visible. *Grondin v. Fanatics, Inc.*, No. 22-cv-1946, 2023 WL 2957474, at *3 (E.D. Pa. Apr. 14, 2023) [hereafter "*Grondin II*"].

Now, in seeking reconsideration, Mr. Grondin asserts for the first time a new argument: that the air bubble is not utilitarian because the statutory definition of a "useful article" excludes utilitarian functions that "merely . . . portray the appearance of the article or . . . convey information." 17 U.S.C. § 101. As a threshold matter, this is a new argument, one that could have been made in either of Mr. Grondin's original oppositions to the two motions to dismiss. A motion for reconsideration is not the place to ask the Court to consider new legal theories, particularly on an issue that was front and center in both motions to dismiss. *See Lazaridis*, 591 F.3d at 669. This is a sufficient reason to deny Mr. Grondin's motion for reconsideration as to this argument.

But Mr. Grondin's argument also fails on the merits. An article or feature of a work is not utilitarian where its function is "merely to portray the appearance of the article or to convey information." 17 U.S.C § 101. That statutory text means what it says: that a feature is not utilitarian if its *only* function is to portray *its own* appearance or to convey information. For example, in *Masquerade Novelty, Inc. v. Unique Industries, Inc.*, the Third Circuit Court of

4

Appeals reversed a district court's holding that novelty animal nose masks were utilitarian because they served the function of being worn as costumes, explaining that "the *only* utility the nose masks have . . . is in their portrayal of animal noses." 912 F.2d 663, 670-71 (3d Cir. 1990).

The Copyright Act also makes clear that

> the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work *only if, and only to the extent that*, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101 (emphasis added). In line with this statutory text, the Third Circuit in *Masquerade* drew a clear distinction between nose masks that "have no utility that does not derive from their appearance" and "a design incorporated in a belt, which holds up the wearer's pants, or even a costume, which may serve, aside from its appearance, to clothe the wearer." *Id.* at 670-71 (internal citations omitted). The Third Circuit reaffirmed this distinction in *Silvertop*, explaining that, while certain features of a banana costume, such as its "combination of colors, lines, shape, and length," served only to convey their own appearance, other features, including holes cut out for the wearer's arms, face, and legs, were nonetheless useful articles because of their "non-appearance related utility." 931 F.3d at 221 (internal quotation marks omitted); *see also Star Athletica L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 419 (2017) (distinguishing between the utilitarian "shape, cut, and dimensions" of a cheerleading uniform and the "two-dimensional work of art fixed in the tangible medium of the uniform fabric").

If the sole function of Mr. Grondin's air bubble was to portray its own appearance, like the novelty nose masks in *Masquerade*, then it would not be utilitarian under the statutory definition. But it is clear from Mr. Grondin's pleadings that the air bubble's function is not to portray its own appearance, but rather to help portray the water inside the puck. In this way, the air bubble is no different than the puck's transparency and hollowness.

5

Mr. Grondin advances a different reading of the caselaw and statutory text. He asserts that the air bubble in his work is not utilitarian because its only function "is to portray the appearance of the work itself—that is, to make part of the work visible." Pls. Mot. For Reconsideration at 3, Doc. No. 38. In other words, Mr. Grondin argues that the statute excludes not only features whose function is "*merely* to portray" its own appearance, but also any feature that makes any part of a work visible or otherwise contributes to the appearance of the work as a whole.

This reading has no basis in the statutory text and, if accepted, would extend copyright protection not only to Mr. Grondin's air bubble, but also to a host of other previously unprotectable features, including—just to name one example—any transparent component of a work designed to make something visible behind it. *But see, e.g., Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1407, 1412 (11th Cir. 2015) (decorative layer of laminate flooring depicting rustic wood design was copyrightable, but transparent "wear layer" was utilitarian); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 914-15 (2d Cir. 1980) (transparent plastic front of children's game was utilitarian feature).

Moreover, as the Court explained in its prior decision, the fact that a utilitarian feature also has some effect on the overall appearance of a work does not render it protectible. *See Grondin II*, 2023 WL 2957474, at *2; *see also Silvertop*, 931 F.3d at 221 n.5 (rejecting the argument that face and arm holes in a banana costume were not utilitarian because they "dictate[d] how the costume drapes on and protrudes from a wearer" and explaining that for the arm holes to not be utilitarian there must be some "artistic aspect to the holes' dimensions or locations" that is not "in relation to the wearer"). Mr. Grondin directs the Court's attention to the Fourth Circuit Court of Appeals' decision in *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488 (4th Cir. 1996). But this case does not support Mr. Grondin's position. There, the Fourth

6

Circuit considered whether animal mannequins designed as mounts for taxidermy displays were utilitarian. *Id.* at 493-94. The court held that they were not, explaining that:

> Even though covered with a skin, the mannequin is not invisible but conspicuous in the final display. The angle of the animal's head, the juxtaposition of its body parts, and the shape of the body parts in the final display is little more than the portrayal of the underlying mannequin. Indeed, the mannequin can even portray the intensity of flexed body parts, or it can reveal the grace of relaxed ones. None of these expressive aspects of a mannequin is lost by covering the mannequin with a skin. Thus, any utilitarian aspect of the mannequin exists "merely to portray the appearance" of the animal.

*Id.* at 494. It is clear from this discussion that what made the animal mannequins copyrightable were their distinct sculptural elements, not the fact that they affected the appearance of the skins that covered them. *Id.*

Here, in contrast, Mr. Grondin identifies no distinctive artistic features of his air bubble except in relation to how the air bubble affects the visibility and appearance of the water inside. The air bubble is therefore a utilitarian feature that is not entitled to copyright protection, and Mr. Grondin has failed to identify any error in the Court's prior decision, let alone a clear one demonstrating a "'wholesale disregard'" of controlling precedent. *In re Energy Future Holdings Corp.*, 904 F.3d at 312 (quoting *Burritt*, 807 F.3d at 253).

Finally, even if Mr. Grondin had identified a clear error, it would not be a basis for reconsideration because it would not "reasonably have resulted in a different conclusion." *Keahey*, 2021 WL 5866877, at *1. This is because, as the Court made clear in its prior decision, even if the air bubble were not utilitarian, it would be insufficient to establish substantial similarity because any similarity between Mr. Grondin's and Fanatics' air bubbles was not sufficiently material so as not to "fall below the quantitative threshold of substantial similarity." *Grondin II*, 2023 WL 2957474, at *3 (internal quotation marks and citation omitted).

7

Mr. Grondin, of course, asserts that the Court's materiality analysis was also in error; the Court turns to this argument next.

### B. Whether the Court Erred in Addressing the Air Bubble's Qualitative Value

To state a claim for copyright infringement, Mr. Grondin must allege that Fanatics copied the original, protectible elements of his work. Copying, in turn, consists of two distinct inquiries, each of which examines the similarity between the works at issue in different ways. First, the actual copying inquiry asks whether the two works are similar enough to infer that a defendant used a plaintiff's work to create their own; in assessing actual copying, a court considers all elements of the two works, including those that would not be entitled to copyright protections. *See Tanksley*, 902 F.3d at 173. Second, the material appropriation inquiry asks whether the two works are substantially similar—that is, whether "a lay-observer would believe that the copying was of protectible aspects of the copyrighted work;" courts making this assessment must exclude any unprotectible elements of the works at issue and then conduct a side-by-side comparison. *Id.* at 174 (internal quotation marks omitted).

To establish material appropriation, a plaintiff may not simply identify shared protectible features of the works at issue; any similarity must also be material, that is, it must be more than *de minimis*. *Clarity Software, LLC v. Allianz Life Ins. Co. of N. Am.*, No. 04-cv-1441, 2006 WL 2346292, at *10 (W.D. Pa. Aug. 11, 2006).

Mr. Grondin does not dispute that he must show more than a *de minimis* similarity. Rather, he takes issue with the fact that the Court, in concluding that any similarity between his air bubble and Fanatics' was *de minimis*, considered the qualitative value of the air bubble. According to Mr. Grondin, "qualitative value" is only relevant to a fair use defense, not raised in this case, and has no place in the substantial similarity analysis.

Mr. Grondin is incorrect. Whether copying is material or *de minimis* depends on both the quantitative and qualitative value of the copying. *See Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002) ("A *de minimis* defense does not apply where the *qualitative* value of the copying is material."). The qualitative value of copying is indeed a factor of a fair use defense. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 564-66 (1985). But controlling precedent is clear that the "qualitative value of the copied material, both to the originator and to the plagiarist" is also relevant to determine whether copying is material for purposes of assessing substantial similarity. *Dun & Bradstreet*, 307 F.3d at 208 (quoting *Harper & Row*, 471 U.S. at 565); *see also Clarity Software*, 2006 WL 2346292, at *10. Again, Mr. Grondin has failed to identify any error in the Court's prior decision on this issue, let alone a clear one.

Even if Mr. Grondin had identified a clear error of law with respect to the Court's analysis of the qualitative value of the air bubble, it, too, would not "reasonably have resulted in a different conclusion," *Keahey*, 2021 WL 5866877, at *1, because, as the Court explained in its prior decision, even if the air bubbles had sufficient qualitative value, any copying would not be material because a reasonable jury could not conclude that unlawful appropriation had taken place based on a comparison of the works as a whole. *Grondin II*, 2023 WL 2957474, at *3. Mr. Grondin asserts, however, that this portion of the Court's decision was also in error. The Court turns now to this issue.

## C. Whether the Court Compared the Works as a Whole

In assessing material appropriation, a court must exclude all unprotectible elements of the works at issue and then engage in a side-by-side comparison of the works to determine if a reasonable jury could find that the works are substantially similar. *Tanksley*, 902 F.3d at 174. In

9

doing so, a Court must consider the works as a whole, rather than compare isolated elements to one another. *Id.* at 175. This approach often inures to the benefit of plaintiffs by ensuring that courts do not "lose sight of material similarities by balkanizing a unified copyrighted work into constituent elements, which are then compared in isolation." *Id.* (internal quotation marks omitted).

Mr. Grondin does not dispute this; rather, he contends that the Court failed to follow this approach and examined the air bubbles in the two works in isolation, rather than comparing the works as a whole. Instead, he argues, the Court should have considered all the elements of the two works, including the hockey puck, the hollow cavity, the use of melted rink ice, and the portrayal of the Stanley Cup as part of the sculpture.

This argument is unavailing for two reasons. First, controlling precedent is clear that the Court must *exclude* from any side-by-side comparison the unprotectible elements of the copyrighted work. *Tanksley*, 902 F.3d at 174. Here, as explained in the Court's two prior opinions, the various elements Mr. Grondin lists are not protectible. Hockey pucks are too commonplace in the world of hockey memorabilia to be protected by copyright law. *Grondin I*, 2023 WL 144284, at *5. The hollow cavity in Mr. Grondin's puck is utilitarian and thus not protectable. *Id.* Using melted game rink ice in a piece of hockey memorabilia is an unprotectible idea. *Id.* at 4. And Mr. Grondin conceded at the oral argument on Fanatics' first motion to dismiss that his infringement claims were limited to Fanatics' crystal hockey pucks, rather than the use of the Stanley Cup. *Id.* at *1 n.1.[2] These elements were properly excluded from the Court's comparison, and Mr. Grondin

---

[2] Because of Mr. Grondin's concession, the Court did not consider whether the use of the Stanley Cup is a protectible element of Mr. Grondin's work. As such, Mr. Grondin cannot now, in a motion for reconsideration, argue that the Court erred in not considering it as part of his infringement claim. Nonetheless, the Court notes that the Stanley Cup, like the shape and dimensions of a hockey puck, is inseparable from the sport of hockey and flows predictably from the idea of producing hockey memorabilia. Accordingly, the use of the Stanley Cup in both works cannot give rise to an inference of material

10

may not attempt to smuggle them in the back door by claiming that the Court must nonetheless consider them in order to assess the works as a whole.[3]

Second, the Court's prior decision was clear that it was not merely comparing the two air bubbles in isolation, but rather "whether a reasonable jury could conclude, based on the similarity between the two air bubbles, that the works as a whole are substantially similar." *Grondin II*, 2023 WL 2957474, at *3. "There is obvious tension between the imperative to filter out unprotectable elements of a work while keeping sight of the work's total concept and feel," which may establish substantial similarity. *Tanksley*, 902 F.3d at 175. But "the basic inquiry remains whether an ordinary observer would perceive that the defendant has copied protected elements of the plaintiff's work." *Id.* Thus, even if the air bubble was both protectable and material, a Court would still need to assess whether a lay observer would, based on the similarities alleged, be able to conclude that material appropriation had occurred. This is precisely what the Court did in its prior decision, concluding that "[g]iven the relatively small size of a hockey puck" and the "narrow range of air bubble sizes that are possible," it was "unlikely that a lay observer would be able to detect that two pucks have the same amount of air inside. . . let alone conclude that unlawful appropriation had taken place in the context of the works as a whole." *Grondin II*, 2023 WL 2957474, at *3.

Mr. Grondin has thus not identified any error in the Court's prior decision, let alone a clear one. Moreover, the Court notes that this final argument has Mr. Grondin grasping at straws. By

---

appropriation, and the Court did not err by excluding this feature from a side-by-side comparison of the two works. *Cf. Grondin I*, 2023 WL 144284, at *5.

[3] Even where all the elements of a work are unprotectable individually, the total concept and feel of the work may be entitled to copyright protection based on the author's original contributions, include the selection, coordination, and arrangement of elements. *Tanksley*, 902 F.3d at 175. But it is the arrangement of those elements that is protected, not the elements themselves. Here, though, the arrangement of elements in Mr. Grondin's hockey puck is not protectable because all the elements are either necessary to realize, or flow predictably from, the same core idea—storing melted rink ice in a hockey puck.

11

the time the Court engaged in a side-by-side comparison of the two works in its prior decision, it had already determined that the air bubble was utilitarian (and thus not protectable) and also that any similarity between the air bubbles was not material. *Id.* at *2-3. Each was a sufficient reason to grant Fanatics' second motion to dismiss, meaning Mr. Grondin's nitpicking over the Court's side-by-side comparison is about as far from a clear error that would "reasonably have resulted in a different conclusion" as is possible to imagine. *Keahey*, 2021 WL 5866877, at *1.

*****

For the foregoing reasons, the Court finds that Mr. Grondin has failed to identify any clear error of law warranting reconsideration. Therefore, the Court denies his motion.

## II. Appropriateness of Attorney's Fees and Costs

Fanatics moves for an award of attorney's fees pursuant to 28 U.S.C. § 1927, which provides that a court may award reasonable attorney's fees where a party "so multiplies the proceedings in any case unreasonably and vexatiously." For a court to award costs or attorney's fees under § 1927, it must be shown that the party charged "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 278 F.3d 175, 188 (3d Cir. 2002)). "[S]anctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *LaSalle Nat'l Bank v. First Conn. Holding Grp., LLC*, 287 F.3d 279, 289 (3d Cir. 2002).

Fanatics asserts that sanctions under § 1927 are warranted because Mr. Grondin's motion for reconsideration was patently unreasonable. The Court finds that the arguments put forth by Mr. Grondin for reconsideration were unpersuasive. Mr. Grondin's arguments founder on the

merits, and his motion also failed to articulate anything close to a clear error of law, let alone one that would have changed the Court's decision. But Mr. Grondin's arguments do not bespeak bad faith or intentional misconduct. Therefore, the Court denies Fanatics' request for attorney's fees under § 1927.[4]

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Grondin's Motion for Reconsideration and denies Fanatics' motion for sanctions under 28 U.S.C. § 1927. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[4] Fanatics has not moved for attorney's fees with respect to Mr. Grondin's motion for reconsideration under 17 U.S.C. § 505, which permits an award of reasonable attorney's fees to the prevailing party in a copyright action and does not require a showing of bad faith. *See Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 156 (3d Cir. 1986).

13